Sharon L. HEATON, Plaintiff
and Petitioner,

v.

SECOND INJURY FUND (EMPLOY-
ER'S REINSURANCE FUND),
Defendant and Respondent.

No. 880335.

Supreme Court of Utah.

May 25, 1990.

James R. Black, Wendy B. Moseley, Salt
Lake City, for plaintiff and petitioner.

Erie Boorman, Salt Lake City, for defen-
dant and respondent.

STEWART, Justice:

We granted a writ of certiorari to review
a decision of the court of appeals which
affirmed a decision of the Industrial Com-
mission. *Heaton v. Second Injury Fund,*
758 P.2d 957 (Utah Ct.App.1988). We re-
verse in part and affirm in part.

On October 6, 1975, the petitioner, Shar-
on L. Heaton, a thirty-nine-year-old male,
was injured when he fell while carrying
two one-hundred-pound sacks of drilling
mud in the course of his employment with
Boyles Brothers Drilling Co. Heaton's in-
jury was diagnosed as severe cervical
strain, causing pain in his head, neck, back,
and arms. In November 1976, Heaton un-

derwent neck surgery, and in August 1977, he had chest surgery. His injuries were so severe that he never returned to work.

Heaton applied for permanent total disability benefits in June 1978. He was referred by administrative law judge Keith Sohm to a medical panel for evaluation. The panel found that Heaton was 67 percent disabled (impaired) and that 60 percent was attributable to the industrial injury, and 7 percent was attributable to a preexisting condition. The medical panel also found that Heaton had "been totally disabled since the injury on October 6, 1975." The panel recommended further testing and stated that, depending on the test results, further surgery might be beneficial. The administrative law judge (ALJ) adopted the medical panel report and, in a decision issued May 3, 1979, stated, "[i]t would appear that [Heaton] is permanently and totally disabled and is entitled to disability compensation. . . ."

Notwithstanding the finding of permanent total disability, Judge Sohm did not refer Heaton to the Division of Vocational Rehabilitation for rehabilitation training, as provided by Utah Code Ann. § 35–1–67 (Supp.1975). Instead, the ALJ awarded Heaton permanent partial disability benefits and stated that Heaton "may be entitled to disability compensation from the Special Fund [Second Injury Fund] when benefits by the insurance carrier expire." The judge also stated: "A review of the case should be made again at that time in case the applicant's condition has changed or that future surgery may have resulted in improvement."

The commission denied Heaton's motion for review of the award of disability benefits. It stated:

However, because of the circumstances of this case, we are not inclined to close the issue as being res judicata for purposes of future review. It would appear to the Commission that future surgery is anticipated, and although a decision may not have been rendered at this time as to whether surgery will be undertaken, we believe it appropriate to withhold a final determination pending a final decision as to surgery and/or the completion of said surgery. In the interim there is a considerable amount of compensation to be paid to the applicant. The Order of the Administrative Law Judge appears to order temporary total disability up to the period of March 1, 1978 where permanent partial disability would commence for 187.2 weeks which means that the permanent partial disability benefits would run out somewhere in 1981 or the early part of 1982. We will therefore defer further consideration of this case to at least March 1, 1981. After the date aforementioned, the applicant may again file with the Commission for a determination of permanent partial or permanent total disability benefits.

Heaton's petition for review to this Court was dismissed because the ALJ's refusal to grant permanent total disability benefits was not a final appealable order.

The permanent partial disability benefits from the insurance carrier expired October 5, 1981. The record is silent as to what, if anything, transpired between that date and March 20, 1985, when Heaton wrote a letter to the commission stating that his condition had worsened and requesting that his rights be clarified. Judge Sohm replied that if Heaton were requesting further benefits, he should have a physician submit a report stating whether Heaton was able to work and whether his condition had deteriorated.[1]

In May 1985, Judge Sohm retired, and in June 1985, Sohm, now as Heaton's legal

---

1. In a letter to Heaton's attorney, dated January 17, 1980, after the commission's order, Judge Sohm stated:

It is true that an Applicant can commence a new proceeding if the Applicant can show that his condition has substantially deteriorated since the last Order was entered. In such cases, the Applicant can file a new Application for hearing, but must accompany the Applica-

tion with medical evidence showing a substantial worsening of the Applicant's condition.

This letter may have contributed significantly to Heaton's delay in applying for permanent total disability benefits after the expiration of the permanent partial disability benefits in October 1981.

counsel, filed an application for permanent total disability benefits on Heaton's behalf. In July 1985, Dr. Ross McNaught submitted a letter stating that he had examined Heaton on July 25, 1985, that Heaton had never fully recovered from the surgeries after his industrial accident, and that his neurological condition was deteriorating. Dr. McNaught expressed concern that without aggressive treatment Heaton would continue to deteriorate and ultimately become bedridden. In October 1985, the Second Injury Fund stipulated that Heaton could not be rehabilitated and waived the requirement of Utah Code Ann. § 35–1–67 (Supp.1985) that Heaton be evaluated by the Division of Vocational Rehabilitation as a condition of receiving permanent total disability benefits.

Another ALJ, Richard Sumsion, issued findings, conclusions, and an order, dated November 18, 1985, which stated that the examination by Dr. McNaught on July 25, 1985, was "[t]he first and only new evidence of a deterioration in the Applicant's condition warranting" a finding of permanent total disability. The ALJ concluded that Heaton was entitled to permanent total disability benefits beginning July 25, 1985, the date of Dr. McNaught's examination of Heaton. Yet, in a letter to Heaton's attorney on January 9, 1986, Judge Sumsion stated, "I must concede that in reviewing the file it does appear that Mr. Heaton is not only permanently and totally disabled at this time but has been from the time of his industrial injury."

Heaton filed a motion for review with the commission. Before the motion was heard, the parties agreed to submit the matter to a second medical panel to determine what medical treatment could be attributed to the industrial accident and what treatment was due to other causes. In his letter authorizing the medical panel to conduct the evaluation, Judge Sumsion specifically asked:

> From the information available, can you determine if Mr. Heaton's permanent physical impairment on or about October 1, 1981 was more than, less than, or about the same as it was when evaluated by the medical panel in March of 1979?

While the second medical panel, consisting of one doctor, questioned the degree of impairment assigned by the original medical panel, the second panel also found:

> There is no significant change in Mr. Heaton's permanent physical impairment. The symptoms of dysfunction are reported to be increased, while objective changes in physical examination cannot be appreciated.

Judge Sumsion reviewed the panel's report, but he did not change the commencement date of the benefits. Instead, he affirmed his original order. Heaton again filed a motion to review, which was denied by the commission.

■ Heaton appealed, and the court of appeals affirmed the commission's order, including the date fixed by the ALJ for the accrual of permanent total disability benefits, July 25, 1985. *Heaton v. Second Injury Fund,* 758 P.2d 957 (Utah Ct.App.1988). Relying on *Oman v. Industrial Commission,* 735 P.2d 665 (Utah Ct.App.), *cert. denied,* 765 P.2d 1277 (Utah 1987),[2] the court of appeals held that the commission's determination of the commencement date for payment of permanent total disability benefits was within its discretion " 'so long as the determination is supported by substantial evidence and not patently unreasonable.' " *Heaton,* 758 P.2d at 960 (quoting *Oman,* 735 P.2d at 667). The court of appeals held that the second medical panel's report was "sufficient evidence" supporting the commission's decision and that the ALJ's 1979 order was internally incon-

---

2. This Court denied a petition for certiorari in *Oman.* At oral argument in *Heaton,* counsel for the Second Injury Fund seemed to rely on the denial of certiorari in *Oman* to argue that this Court had already addressed the primary issue raised by this case. However, our rules clearly state that the denial or granting of a petition for certiorari "shall not constitute a decision on the merits." Utah R.App.P. 51(a). It should be emphasized that the denial of a petition for certiorari has no precedential value whatsoever: *See, e.g., Hopfmann v. Connolly,* 471 U.S. 459, 460–61, 105 S.Ct. 2106, 2107, 85 L.Ed.2d 469 (1985); 16 Wright, Miller, Cooper & Gressmann, *Federal Practice and Procedure: Jurisdiction* § 4004, at 510 (1977).

sistent and not conclusive on the issue of permanent total disability. *Heaton,* 758 P.2d at 960. The court concluded that "there was sufficient evidence before the ALJ to support his finding that there was 'no evidence of what change, if any, may have taken place in the applicant's condition over the past six years,' and that Heaton was rendered totally and permanently disabled sometime during the interim." *Heaton,* 758 P.2d at 960. Stating that the terms of the controlling statute, § 35–1–67, were silent as to the date that permanent total disability payments should commence accruing, the court of appeals, relying on *Oman,* supplied its own test. It held that "the Commission's interpretation of the statute that permanent total disability benefits accrue when there is sufficient medical evidence that the claimant's permanent total disability has stabilized is both reasonable and rational." *Heaton,* 758 P.2d at 961. In dissent, Judge Bench stated that the correct date for the commencement of permanent total disability benefits was October 30, 1985, the date the parties waived referral to the Division of Vocational Rehabilitation. *Heaton,* 758 P.2d at 962 (Bench, J., dissenting).

On this petition to review, the Second Injury Fund argues that Judge Bench's dissent is correct and that the date for the commencement of benefits in odd-lot cases should be either the date of waiver of referral to the Division of Vocational Rehabilitation or the date when the division certifies that the applicant cannot be rehabilitated.

■ The issue before this Court is solely a matter of statutory construction, i.e., whether permanent total disability benefits should be paid to Heaton from October 6, 1981, as Heaton contends, or from July 25, 1985, as the court of appeals ruled, or October 30, 1985, as Judge Bench concluded and the Second Injury Fund asserts.

Resolution of the issue does not turn on issues of fact or agency expertise in construing terms of art that are found in the statute, nor on the construction of words having an uncertain meaning that may be highly colored by the facts to which they are to be applied. Rather, the issue turns on the proper construction of a statute and the governing policy that underlies it. The court of appeals, in applying a "reasonableness" and "arbitrary" standard in sustaining the commission's actions under § 35–1–67, gave the commission broader latitude than it is entitled to. We conclude that the issue before this Court is a question of law, and we do not, therefore, defer to the commission on its construction of § 35–1–67.

■ It is the duty of the courts and the commission to construe the Workers' Compensation Act liberally and in favor of employee coverage when statutory terms reasonably admit of such a construction. As stated in *McPhie v. Industrial Commission,* 567 P.2d 153 (Utah 1977):

A further equally recognized rule of construction resolves any doubt respecting the right of compensation in favor of the injured employ[ee] or his dependents, as the case may be, and the compensation statutes should be liberally construed in favor of recovery.

567 P.2d at 155 *(footnotes omitted).*

■ The issue of when the obligation to pay permanent total disability benefits arises should be guided, if not governed, by § 35–1–67 (Supp.1975). That provision deals with the payment of permanent total benefits. At the time of Heaton's injury, it stated in pertinent part:

[A] finding by the commission of permanent total disability shall in all cases be tentative and not final until such time as the following proceedings have been had:

Where the employee has tentatively been found to be permanently and totally disabled, it shall be mandatory that the industrial commission of Utah refer such employee to the division of vocational rehabilitation under the state board of education for rehabilitation training.... If and when the division of vocational rehabilitation under the state board of education certifies to the industrial commission of Utah and in writing that such employee has fully co-operated with the division of vocational rehabilitation in its

effort to rehabilitate him, and in the opinion of the division the employee may not be rehabilitated, *then the commission shall order that there be paid to such employee weekly benefits ... out of that special fund provided for by section 35-1-68(1), for such period of time beginning with the time that the payments (as in this section provided) to be made by the employer or its insurance carrier terminate and ending with the death of the employee. No employee, however, shall be entitled to any such benefits if he fails or refuses to co-operate with the division of vocational rehabilitation as set forth herein.*[3]

(Emphasis added.)

Although § 35-1-67 (Supp.1975) does not directly fix the time when permanent total benefits should begin to accrue in this case, the logic and rationale that underly that section should also apply to a case that is virtually indistinguishable from a case that is technically within the statute. That section provided that if a worker "has fully co-operated with the division of vocational rehabilitation, ... and ... may not be rehabilitated," then permanent total benefits paid by the Second Injury Fund should commence at the "period of time beginning with the time that the payments (as in this section provided) to be made by the employer or its insurance carrier terminate and ending with the death of the employee." Basically, the statutory scheme is designed to prevent gaps in coverage that thwart the intent of the Workers' Compensation Act

and promote that which we warned against in previous cases, i.e., that injured workers not become "the objects of charity." *See, e.g., Marshall v. Industrial Comm'n,* 681 P.2d 208, 210 (Utah 1984); *Henrie v. Rocky Mountain Packing Corp.,* 113 Utah 415, 427, 196 P.2d 487, 493 (1948).

Here, there is no question that Heaton is totally disabled. Furthermore, all parties have stipulated that referral to the Division of Vocational Rehabilitation was not necessary, apparently because the outcome was a foregone conclusion.

The court of appeals stated that the statute "is silent on the subject of when benefits began to accrue and is therefore ambiguous," *Heaton,* 758 P.2d at 960–61, and ruled that the commission's ruling was supported by substantial evidence and was "not patently unreasonable." *Heaton,* 758 P.2d at 961. The court reached that conclusion because it failed to perceive the relevance of § 35-1-67 and did not distinguish the critical factual difference between this case and its own case of *Oman v. Industrial Commission,* 735 P.2d 665 (Utah Ct.App.), *cert. denied,* 765 P.2d 1277 (Utah 1987). *Oman* held that the date of medical confirmation of permanent total disability in *progressive* injury cases was the commencement date for benefits. *Oman,* 735 P.2d at 666. Clearly, however, this is not a progressive injury case, and the issue of when a total disability finally occurs is not at issue here. In the usual progressive injury case, the injured employ-

---

**3.** Section 35-1-67(5) (Supp.1989) as currently written directs the Industrial Commission to determine the commencement date of benefits as of the date the employee became totally and permanently disabled if rehabilitation is not possible. That section provides:

(5) A finding by the commission of permanent total disability shall in all cases be tentative and not final until all of the following proceedings have occurred:

(a) Upon tentatively determining that an employee is permanently and totally disabled, the commission shall, unless otherwise agreed by the parties, refer the employee to the Utah State Office of Rehabilitation under the State Board for Vocational Education for rehabilitation training....

(b) If the Utah State Office of Rehabilitation under the State Board for Vocational Edu-

cation certifies to the commission in writing that the employee has fully cooperated with that agency in its efforts to rehabilitate the employee, and in the opinion of the agency, the employee is not able to be rehabilitated, the commission shall, after notice to the parties, hold a hearing to consider the agency's opinion as well as other evidence regarding rehabilitation. The parties may waive the right to a hearing. If a preponderance of the evidence shows that successful rehabilitation is not possible, the commission shall order that the employee be paid weekly permanent total disability compensation benefits. *The period of benefits commences on the date the employee became permanently totally disabled, as determined by the commission based on the facts and evidence....*

(Emphasis added.)

ee is not totally disabled immediately following the injury, but his condition deteriorates over some period of time until the disability resulting from the injury is total. Leaving that kind of question to the commission's judgment makes sense since no fixed time would be appropriate. Here, Heaton was found by an ALJ to be totally disabled at the time of the accident and that finding has never been contested. To apply the rule embodied in § 35–1–67 to this case is merely to effectuate legislative policy.

The evidence before the commission in 1979 showed that Heaton had a physical impairment due to an industrial injury and that he was no longer able to perform the duties required in his occupation. The 1978 medical panel found that Heaton had been "totally disabled since the injury on October 5, 1975." The ALJ's 1979 findings of fact and conclusions of law adopted the medical panel's findings and stated that "[Heaton] has been unable to work since [the accident]. In general, his condition has become progressively worse and he has been unable to do even light activities." The commission did not, however, direct Heaton to the Division of Vocational Rehabilitation in 1979, as it could have done. The 1987 medical report agreed with the findings of the first panel on all factors except the extent of impairment. The second medical panel report stated that Heaton's condition had *worsened* over the years. Furthermore, the ALJ's 1986 letter stated that Heaton had probably been permanently and totally disabled since the time of his accident. No evidence was ever adduced nor findings made that challenged the 1978 medical panel finding that Heaton had been totally disabled since 1975 and the 1979 finding that Heaton had been unable to work since the accident. Furthermore, no one has ever disputed an ALJ finding in 1979 that Heaton was permanently and totally disabled. Both administrative law judges who reviewed Heaton's case concluded that his total disability commenced at the time of the accident. The commission should have referred Heaton to the Division of Vocational Rehabilitation to determine whether he could have been reha-

bilitated prior to the time that his permanent partial benefit expired. That duty is explicit under § 35–1–67.

In *Hardman v. Salt Lake City Fleet Management*, 725 P.2d 1323 (Utah 1986), this Court outlined the obligations of each party in the rehabilitation process:

> In order for an accurate assessment of his rehabilitation to be made, section 35–1–67 requires the Commission to draw upon the expertise of the Division of Vocational Rehabilitation.... If [the employee cooperates with the Division,] the Division then certifies to the Commission that it has received the employee's full cooperation in its efforts to rehabilitate him, and that in its opinion, he cannot be rehabilitated. It is at this time that the burden shifts to the employer....

*Hardman*, 725 P.2d at 1327. In view of the ALJ's finding in 1979 that Heaton was totally and permanently disabled, the commission, or the ALJ, only needed to refer Heaton to the Division of Vocational Rehabilitation. After this case was finally resurrected, that requirement was bypassed when all parties stipulated that Heaton need not be evaluated by the division. Quite clearly he was not amenable to rehabilitation. With that, Heaton met all the requirements for an award of benefits under the statute.

The Second Injury Fund's argument is also based on § 35–1–67. It argues that the award of permanent total benefits should be made as of the date of a waiver of referral to the Division of Vocational Rehabilitation when there has been no actual referral to the division. That position has no support in § 35–1–67, or elsewhere, since Heaton was entitled to permanent total benefits long ago. Since it is clear that he was totally and permanently impaired from the time of the injury in 1975 to the time when permanent partial payments terminated, he was indisputably entitled to permanent total benefits as of the date of the termination of the permanent partial benefits. Judge Sumsion in effect agreed with that conclusion in his 1986 letter to Heaton's attorney. He stated: "I

must concede that in reviewing the file it does appear that Mr. Heaton is not only permanently and totally disabled at this time but has been from the time of his industrial injury."

In sum, Heaton was erroneously deprived of benefits that should have started to accrue as soon as his permanent partial disability benefits expired in October 1981.

The court of appeals correctly held that the governing statute, Utah Code Ann. § 35–1–78 (Supp.1985), mandates that interest at the rate of 8 percent per annum be given on such awards. *Marshall v. Industrial Comm'n*, 704 P.2d 581, 583 (Utah 1985). Therefore, Heaton is entitled to benefits dating from October 6, 1981, and interest on such benefits.

Affirmed in part, reversed in part, and remanded.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

ZIMMERMAN, Justice (dissenting):

I dissent from the disposition made by the majority. As a matter of equity, if I felt free to substitute my judgment for that of the administrative law judge or the Utah Industrial Commission, I probably would also find a way to conclude that Heaton was entitled to total disability payments from 1981 on. That, however, is not my role nor this court's role.

For the reasons stated in the court of appeals' opinion, I conclude that there is sufficient evidence to support the factual conclusion reached by the commission. If the Second Injury Fund had properly raised the question by filing a cross-petition for certiorari, I would be inclined to agree with Judge Bench as to the date of total disability. However, that issue appears not to be properly before us.