**AMERICAN FIRST CREDIT UNION, a Utah corporation, Plaintiff and Appellee,**

v.

**FIRST SECURITY BANK OF UTAH, N.A. Defendant, Third–Party Plaintiff, and Appellant,**

v.

**RENAISSANCE EXCHANGE, INC., and Don Newsom, individually, Third–Party Defendants.**

No. 940483–CA.

Court of Appeals of Utah.

May 18, 1995.

---

Dee R. Chambers and Scott A. Hagen, Salt Lake City, for appellant.

Timothy W. Blackburn and Michael T. Roberts, Ogden, for appellee.

Before Judges BENCH, GARFF[1], and JACKSON, JJ.

## OPINION

JACKSON, Judge:

First Security Bank of Utah (First Security) appeals the trial court's judgment in favor of America First Credit Union (America First) for $99,999, the amount paid by First Security to Renaissance Exchange, Inc. (Renaissance), despite an assignment for security of the amount to America First. We affirm.

## FACTS

Between April 1988 and May 1990, Renaissance entered into three loan transactions with America First. As part of the first loan transaction, Renaissance executed a commercial security agreement in favor of America First, granting America First a security interest in a certificate of deposit held at First Security in the amount of $99,999. America First took actual possession of the certificate of deposit, which stated on its face that it was "payable at the issuing office to the registered owner(s) upon presentation to surrender the certificate properly endorsed."[2]

America First then notified First Security in writing that it was holding the certificate as collateral. Don Newsom signed the written notice of assignment as president of Renaissance, acknowledging that Renaissance assigned the certificate to America First.[3]

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Rule 3–108(4) of the Utah Code of Judicial Administration.

2. America First believed that First Security would pay the proceeds from the certificate of deposit only upon presentation, as stated on the certificate. When America First obtained the certificate from Renaissance, it was First Security's policy to pay the proceeds from the certificate only upon presentation. However, before the third loan was made, First Security changed its policy, allowing registered owners of the certificates to collect the proceeds without presentation. First Security did not notify America First of this change in policy.

3. The assignment stated as follows:

We are holding as collateral on a Line of Credit Savings Certificate No. 984993 in the Amount of $99,999.00, in the name of Renaissance Exchange. Renaissance Exchange, Inc. is willing to pledge this certificate as collateral on their loan with America First Credit Union. . . . .

America First Credit Union is holding the original certificate as collateral. We would appreciate your acknowledgement of the Assignment, also confirming the balance of $99,-999.00. This Assignment will be in effect until you have received written notice of our release of the Assignment. Please acknowledge the

An officer of First Security signed the Assignment, acknowledging the assignment and confirming the balance of the certificate.

First Security then flagged on its computer system the assignment for the certificate of deposit. When the certificate was rolled over into a new certificate, First Security again coded the assignment into its computer system. After the second loan was transacted, America First gave First Security a second written assignment identical to the first notice of assignment. Don Newsom again signed the second assignment, acknowledging that Renaissance assigned the certificate to America First and an officer of First Security signed the assignment, making the same confirmation and acknowledgments as in the first assignment.

When the certificate of deposit was rolled over for a third time into a new certificate, First Security inadvertently failed to flag the assignment to America First on its computer system.

At the time of the third loan, Newsom represented to First Security that America First had released its interest in the savings certificate and made a demand that the certificate proceeds be paid to Renaissance. First Security paid the proceeds, which were then allegedly deposited into a Renaissance account with America First. Seven months later, Renaissance defaulted on its payments to America First. America First made a demand on First Security to pay the proceeds to America First and offered to tender the certificate. First Security refused the tender and informed America First that it had already paid the proceeds to Renaissance.

America First brought an action against First Security to enforce its rights in the proceeds.[4] The trial court entered judgment for America First against First Security for

the full amount of the account proceeds. First Security now appeals.

## ISSUES

First Security claims: (1) the trial court erred in concluding that First Security had notice that payment of the account was to be made to America First; (2) First Security was free to pay Renaissance the funds because America First had no right to them until Renaissance defaulted on the third loan; and (3) the trial court improperly failed to credit First Security for benefits America First received from payment of the $99,999 to Renaissance.

## ANALYSIS

▉ First Security claims the trial court erred in concluding that First Security had notice that payment of the account was to be made to America First. An account debtor may pay an assignor until the account debtor "receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." Utah Code Ann. § 70A-9-318(3) (1992). Thus, First Security had the right to pay Renaissance until First Security received notice that the account had been assigned and that payment should be made to America First.

First Security does not dispute that it received notice that the account had been assigned. However, First Security challenges the trial court's determination that First Security received notice that payment was to be made to America First. First Security asserts that simply by examining the plain language of the notice of assignment we must conclude the document provided insufficient notice to First Security that payment should be made to America First.

▉ However, whether an account debtor has notice that payment is to be made to the assignee is based upon all the relevant facts and circumstances of each particular case,

Assignment and the balance by signing below. One copy should be retained in your files.

4. First Security also filed a third-party claim against Renaissance and Don Newsom for the entire amount sought from First Security by America First. In a separate action, America First sued Newsom and Renaissance for the deficiency on the loan. All actions were consolidat-

ed and tried in a bench trial in 1993. The trial court entered judgment for America First against Don Newsom and Renaissance for the full amount of the loan deficiency less the amount to be paid by First Security to America First, and judgment for First Security against Don Newsom and Renaissance for the account proceeds.

not just the explicit language of the notice of assignment. *See Bank of Salt Lake v. Corporation of the President of the Church of Jesus Christ of Latter–Day Saints*, 534 P.2d 887, 890–91 (Utah 1975); *Moab Nat'l Bank v. Keystone–Wallace Resources*, 30 Utah 2d 330, 517 P.2d 1020, 1022–23 (1973); *see also Municipal Trust & Savs. Bank v. Grant Park Community Dist.*, 171 Ill.App.3d 289, 121 Ill.Dec. 449, 452, 525 N.E.2d 255, 258 (1988).

■ Further, the parties agreed in their briefs that the notice of assignment had to provide *reasonable* notice that America First was to receive payment. *See Municipal Trust*, 121 Ill.Dec. at 452, 525 N.E.2d at 258. Whether a party had reasonable notice is a factual determination that we review under a clearly erroneous standard. *See id.*; *4447 Assocs. v. First Sec. Fin.*, 889 P.2d 467, 471 (Utah App.1995).

A person receives notice of a fact when "(i) he has actual knowledge of it; (ii) he has received a notice or notification of it; or (iii) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." Utah Code Ann. § 70A–1–201(25) (Supp.1994).

The trial court considered the following undisputed facts in concluding First Security had reasonable notice that America First should receive payment:

First, "First Security never demanded more proof of the assignment." If First Security had any doubt as to the notice of assignment, it should have requested more information. First Security "may not be safe in disregarding [the notice to pay America First] unless [First Security] has notified the assignee with commercial promptness as to the respects in which the [notice] is considered defective." *See* U.C.C. § 9–318, Official Comment 5 (1990). Here, First Security chose to acknowledge and promise to comply with America First's notice instead of demanding more proof of the assignment. Second, "the assignment was not sent independently by America First, but rather was co-signed by Renaissance." Third, "America First reasonably believed that First Security would honor its statement on the certificate of deposit and would not release the proceeds except upon proper presentation."

Moreover, the trial court found that although the notice of assignment did not contain explicit instructions directing First Security to "take action,"

First Security Bank recognized the assignment and the notice that payment should be made to America First Credit Union, not Renaissance Exchange, and flagged on its computer system the assignment for the certificate of deposit. The information on the computer screen was designed to alert First Security Bank employees of the assignment and the credit union's right to payment.

First Security has not shown that any of these facts are clearly erroneous. *See Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1286 (Utah 1993); *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989); *4447 Assocs.*, 889 P.2d at 471.

Under these facts and circumstances, we cannot say the trial court erred in determining First Security had reasonable notice that America First had the right to payment. Accordingly, we make no judgment as to the sufficiency of the written notice of assignment standing alone. *See Municipal Trust*, 121 Ill.Dec. at 452, 525 N.E.2d at 258.

First Security also asserts that it was free to pay Renaissance the account proceeds because America ′First had no right to the account proceeds until Renaissance defaulted on the third loan, which occurred after First Security paid the $99,999 to Renaissance. First Security further claims that the trial court improperly failed to credit First Security for benefits America First received from at least some of the $99,999 and to make sufficient findings of fact concerning this issue. We have reviewed these arguments and find them to be without merit. Thus, we do not address them here. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989) (court may decline to address arguments without merit on appeal). Accordingly, we affirm the trial court's judgment.

BENCH and GARFF, JJ., concur.