AMERICA FIRST CREDIT UNION, a Utah corporation, Plaintiff and Petitioner,

v.

FIRST SECURITY BANK OF UTAH, N.A., Defendant and Respondent.

Renaissance Exchange, Inc., and Don Newsom, Third–Party Defendants.

No. 950274.

Supreme Court of Utah.

Jan. 21, 1997.

Timothy W. Blackburn, Michael T. Roberts, Sandra Crosland, Ogden, for plaintiff and petitioner.

Dee R. Chambers, Scott A. Hagen, Salt Lake City, for defendant and respondent.

### ON CERTIORARI TO THE UTAH COURT OF APPEALS

HOWE, Justice:

We granted certiorari to review a decision of the court of appeals that First Security Bank wrongfully paid to Renaissance Exchange, Inc., the proceeds of a certificate of deposit that Renaissance had assigned to

America First Credit Union (AFCU) as collateral securing a loan to Renaissance. *America First Credit Union v. First Sec. Bank of Utah, N.A.,* 896 P.2d 25 (Ct.App.), *cert. granted,* 910 P.2d 425 (Utah 1995).

## FACTS

AFCU made a series of three loans to Renaissance, a supplier of food service to military bases under government contracts, to furnish Renaissance with working capital and to pay outstanding loans owing to AFCU and other lenders. At the time the first loan was made, Renaissance executed a security agreement with AFCU assigning as collateral a savings certificate it owned for $99,999 issued by First Security Bank. AFCU prepared a written notice of assignment, signed by Don Newsom, president and sole shareholder of Renaissance, and subsequently by an officer of First Security acknowledging receipt. The notice of assignment provided:

> We are holding as collateral on a Line of Credit Savings Certificate No 984993 in the amount of $99,999.00, in the name of Renaissance Exchange. Renaissance Exchange Inc. is willing to pledge this certificate as collateral on their loan with America First Credit Union.
>
> Renaissance Exchange, Inc. [signed by Renaissance president]
>
> America First Credit Union is holding the original certificate as collateral. We would appreciate your acknowledgment of the Assignment, also confirming the balance of $99,999.00. This Assignment will be in affect [sic] until you have received written notice of our release of the Assignment. Please acknowledge the Assignment and the balance by signing below. One copy should be retained in your files.
>
> First Security Bank of Utah [signed by bank officer]

The savings certificate stated on its face that payment would be made to the registered owner "upon presentation and surrender of this certificate properly endorsed," and that otherwise upon maturity the account would automatically be renewed for a like period at the interest rate then offered.

At the time the second loan was made, AFCU prepared a second notice of assignment identical to the first. The certificate had previously matured and been renewed, and the new certificate number was hand-lettered by First Security on the notice of assignment to replace the original number and then signed by a First Security officer. Subsequently, First Security replaced the savings certificate with a special day-time certificate of deposit. This certificate did not state on its face that it had to be presented for payment. Consequently, in order to alert its personnel to the assignment, the bank placed a "flag" or "block" on the account in its computer system. When the certificate rolled over for the third time, First Security inadvertently removed the computer flag but did not notify AFCU of either the change in procedure or the removal of the flag.

AFCU held the certificate only as collateral on the Renaissance loan and therefore had no right to the proceeds except in the event of Renaissance's default. When the certificate matured for the third time, Newsom represented to First Security that the assignment had been released, and withdrew the proceeds of $99,999,[1] although AFCU had not given First Security notice of release of the assignment. Newsom deposited the funds in Renaissance's AFCU checking account and subsequently paid them out. Seven months later, Renaissance defaulted with a balance of $551,529.31 owing on its third loan from AFCU, in the original amount of $675,000. AFCU demanded payment of the certificate by First Security, but the bank refused payment. AFCU then brought this suit against First Security, which in turn asserted a third-party claim against Renaissance and Don Newsom for $99,999. In a separate action, AFCU sued Newsom and Renaissance for the total balance owing on the loan. The actions were consolidated.

The trial court found that, while the notice of assignment did not contain any instructions directing First Security to take immedi-

---

1. Newsom had earlier withdrawn the accrued interest. Neither party makes this an issue on appeal, however, probably because the security agreement granted the assignor the "beneficial use" of the collateral.

ate action, it "recognized the assignment and the notice that payment should be made to America First Credit Union, not Renaissance Exchange, and flagged on its computer system the assignment for the certificate of deposit." The court concluded that the "totality of circumstances" gave First Security actual knowledge of the assignment which fulfilled the "reasonable notice" requirement of Utah Code Ann. § 70A–9–318(3). Therefore, the trial court ruled that AFCU had an enforceable security interest in the certificate and that First Security had breached its duty to honor that interest. The court imposed judgment against First Security accordingly and also awarded judgment in favor of AFCU against Newsom and Renaissance for the loan balance and in favor of First Security against Newsom and Renaissance for the certificate proceeds. First Security appealed to the court of appeals, which affirmed, concluding that First Security had not shown the factual findings of the trial court to be clearly erroneous and that, therefore, "we cannot say the trial court erred in determining First Security had reasonable notice that America First had the right to payment." *America First Credit Union,* 896 P.2d at 28. We granted certiorari.

### ANALYSIS

#### A. Fulfillment of Statutory Notice Requirement

■ First Security contends that it did not breach any duty to AFCU by paying the proceeds to Renaissance because the notice of assignment was inadequate in that it did not direct First Security to pay AFCU, and when First Security paid the proceeds to Renaissance, AFCU had no present right to them.

■ Section 70A–9–318(3), Utah Code Ann. (1990), which is identical to the Uniform Commercial Code (U.C.C.), provides:

The account debtor is authorized to pay the assignor until the *account debtor receives notification that the amount due or to become due has been assigned* and that *payment is to be made to the assignee.* A notification which does not reasonably identify the rights assigned is ineffective.

If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

(Emphasis added.) This statute imposes a two-pronged notice requirement. First, notice of the assignment must be given. Second, the notice must state that payments are to be made to the assignee. First Security admits receiving notice of the assignment but contends that because it did not receive notice that payment should be made to AFCU, it was entitled to pay Renaissance. AFCU responds that the second prong of section 70A–9–318(3) is tailored to "indirect collection" situations and therefore does not apply here. *See* U.C.C. § 9–318 cmt. ¶ 3; *First Nat'l Bank of Rio Arriba v. Mountain States Tel. & Tel. Co.,* 91 N.M. 126, 571 P.2d 118, 120 (1977).

However, the plain language of the notice of assignment, which one of First Security's officers acknowledged receiving, informed the bank of the assignment, that it would continue in force until revoked in writing, and that AFCU was holding the certificate of deposit. Furthermore, First Security knew that the certificate itself required presentation and endorsement before payment could be made. Thus payment of the certificate proceeds to Renaissance should have been impossible by First Security's own policy as long as AFCU held the certificate. When that policy changed, the computer flag on the account replaced the certificate as notice to First Security that payment was to be made to AFCU rather than to Renaissance. First Security's generation of the computer flag demonstrates that it had notice of the change in payment. Its failure to notify AFCU that the actual certificate was no longer required for payment and its erroneous removal of the computer flag were unilateral actions taken after the notice was complete and had no impact upon the duties of either party. The statute should not be read as requiring more of AFCU than what it did to apprise First Security of its continuing interest in the certificate.

■ We therefore hold that First Security received notice of the assignment and that

payment was to be made to AFCU as required by Utah Code Ann. § 70A-9-318(3). Thus we affirm the finding of the trial court, upheld by the court of appeals, that First Security received "reasonable notice." By releasing the account proceeds to Renaissance while on notice of the unretracted assignment of the account as collateral for the AFCU loan, First Security breached its statutory duty to AFCU.

### B. Credit to First Security for Benefits AFCU Received from Certificate Proceeds

██ First Security contends that AFCU benefitted from a portion of the certificate proceeds because $19,096.03 was used by Renaissance, in combination with other funds, to repay a loan from Valley Bank and thereby obtain the release of collateral that was then assigned to AFCU. However, even if some of the certificate of deposit proceeds were so used, First Security offered no evidence that the collateral was actually assigned to AFCU or that such an assignment benefitted AFCU. Additionally, First Security asserts that the brief deposit of the certificate proceeds in the AFCU checking account, in and of itself, was of benefit to it. Again, First Security does not essay to show how. Renaissance did not default on the loan until seven months after it impermissibly withdrew the certificate proceeds it had pledged as collateral. AFCU had no current right to the funds when they were deposited in Renaissance's checking account.

██ Finally, First Security argues that the trial court's conclusion of law that "[n]one of the money used by Renaissance to pay on the $675,000.00 note [to AFCU] came from the savings certificate" is error because the trial court did not support the conclusion with findings of fact. However, the trial court also stated that "[a]ny conclusion of law set forth herein which is more properly characterized as a finding of fact, shall be deemed to be a finding of fact." The disputed statement is properly characterized as a finding of fact and we will consider it as such. We will not " 'set aside the trial court's factual findings unless they are against the clear weight of the evidence or [we] otherwise reach a

definite and firm conviction that a mistake has been made.' " *Sweeney Land Co. v. Kimball,* 786 P.2d 760, 761 (Utah 1990) (quoting *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1377 (Utah 1987)). Because First Security offers no evidence beyond bald statements that savings certificate money was used to pay on the loan, we cannot conclude that the trial court's finding is clearly erroneous.

Judgment affirmed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.