1999 UT App 013

**4447 ASSOCIATES, a Utah general partnership; and Zions First National Bank, a national banking association, Plaintiffs and Appellees,**

v.

**FIRST SECURITY FINANCIAL, a Utah corporation, Defendant and Appellant.**

No. 971644–CA.

Court of Appeals of Utah.

Jan. 22, 1999.

Scott H. Clark, James S. Jardine, and Brent D. Wride, Salt Lake City, for Appellant.

Jeffrey M. Jones and J. Mark Gibb, Salt Lake City, for Appellees.

Before GREENWOOD, Associate P.J., and JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

¶1 This case is before us for the second time. *See 4447 Assocs. v. First Sec. Fin.*, 889 P.2d 467 (Utah Ct.App.1995) (*4447 I*). In this appeal, First Security Financial (First Security) challenges the trial court's order on remand denying First Security's defenses to judgment and requiring First Security to pay 4447 Associate's (4447's) attorney fees. We affirm.

## FACTS

¶2 The background of this case is set forth in *4447 I*. See *4447 Assocs. v. First Sec. Fin.*, 889 P.2d 467, 468–76 (Utah Ct.App.1995). Therefore, " 'we add only those facts and events necessary to review the trial court's actions on remand pursuant to our directions in [*4447 I*].' " *Bailey–Allen Co. v. Kurzet*, 945 P.2d 180, 183 (Utah Ct.App.1997) (quoting *Willey v. Willey*, 914 P.2d 1149, 1150 (Utah Ct.App.1996), *rev'd*, 951 P.2d 226 (Utah 1997)).

¶3 First Security executed an asset purchase agreement with Capitol, under which First Security made an initial payment and agreed to make interest payments at intervals and a balloon payment at the end of three years. As collateral for a loan, Capitol assigned the right to receive payment under the asset purchase agreement to Zions First National Bank (Zions), which later assigned it to 4447. While Zions was the assignee, First Security and Capitol disagreed as to

their respective rights and responsibilities under the asset purchase agreement, prompting them to enter into a settlement agreement in which, among other things, First Security's remaining debt to Capitol was purportedly extinguished. When Capitol later defaulted on its loan from Zions, Zions demanded that First Security pay Zions under the asset purchase agreement, then filed suit when First Security refused to pay. First Security raised the settlement agreement as a defense, arguing it had not been properly notified of the assignment under Utah Code Ann. § 70A–9–318 (1997) before executing the settlement agreement extinguishing its debt. After trial, the trial court agreed with First Security.

¶ 4 On appeal in *4447 I*, this court reversed the trial court. *See 4447 Assocs.*, 889 P.2d at 476. We rejected the argument that Utah Code Ann. § 70A–9–318(3) (subsection three) applies to this case, *see id.* at 472 n. 8, and analyzed the facts under section 70A–9–318(1) of the Utah Code.[1] We applied sub-

section (1)(b) because First Security raised the terms of the settlement agreement between it and Capitol as a defense to paying 4447 under the assignment. *See 4447 Assocs.*, 889 P.2d at 472. The settlement agreement was not part of the original contract—the asset purchase agreement—and therefore fell under subsection (1)(b) as "any other defense ... of the account debtor [First Security] against the assignor [4447]." Utah Code Ann. § 70A–9–318(1)(b) (1997). This court decided, under subsection (1)(b), that First Security could not assert the settlement agreement as a defense to paying 4447 because First Security had received "notification of the assignment" to Zions before entering the settlement agreement with Capitol. *Id.; see 4447 Assocs.*, 889 P.2d at 475. We held that the notification First Security received was a notation in a financial statement of an officer of Capitol given to First Security, which stated that the account " 'has been pledged to Zion's First National Bank.' " *4447 Assocs.*, 889 P.2d at 469. We then "remand[ed] to the trial court for entry

---

1. In its entirety, section 70A–9–318 reads:

   (1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 70A–9–206 the rights of an assignee are subject to:

   (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

   (b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

   (2) So far as the right to payment or a part thereof under an assigned contract has not been fully earned by performance, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee unless the account debtor has otherwise agreed but the assignee acquires corresponding rights under the modified or substituted contract. The assignment may provide that such modification or substitution is a breach by the assignor.

   (3) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been

   made and unless he does so the account debtor may pay the assignor.

   (4) A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in chattel paper or a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.

   Utah Code Ann. § 70A–9–318 (1997).

   As a whole, section 70A–9–318 provides an integrated scheme defining different aspects of "the third-party rights that arise when contract rights are assigned as part of a secured transaction." *First Nat'l Bank v. Thomson Consumer Elecs., Inc.*, 84 F.3d 397, 400 (11th Cir.1996); *see also In re Governor's Island*, 39 B.R. 417, 422 (Bankr.E.D.N.C.1984) (" 'In all cases, the rules of § 9–318 ought to control what defenses against the assignor can be asserted against the assignee.' " (quoting 4 Arthur L. Corbin, *Corbin on Contracts* § 895, at 95 (1951 & Supp.1984))). However, because of the differing notice requirements of subsections one and three, in this case, we have had to delineate and focus on the technical distinctions between the factual scenarios arising under subsection one versus subsection three. *See Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871, 883 (S.D.N.Y. 1991) ("Looking at the specific language of the statute, it appears clear that the [notice] responsibilities incumbent upon an assignee under section 9–318(1) are less stringent than those required by section 9–318(3).").

of an appropriate judgment in favor of 4447 Associates in accordance with this opinion." *Id.* at 476.

¶ 5 First Security filed a petition for writ of certiorari with the Utah Supreme Court seeking review of our decision. The supreme court summarily denied the petition. *See Zions v. First Sec. Fin.,* 899 P.2d 1231 (Utah 1995) (table). In its briefing to the supreme court, First Security for the first time asserted Utah Code Ann. § 70A–9–318(2) (1997) (subsection two) as a defense to paying 4447 under the assignment. *See supra* note 1.

¶ 6 On January 21, 1997, the supreme court issued an opinion in a different case interpreting subsection three's notice requirements. *See America First Credit Union v. First Sec. Bank,* 930 P.2d 1198, 1201–02 (Utah 1997). On remand of *4447 I* from this court to the trial court, First Security argued that the *America First* decision now controls and brings this case within the purview of subsection three, instead of subsection one. *See* Utah Code Ann. § 70A–9–318(1), (3) (1997). Consequently, it contended that, because 4447 indisputably did not meet subsection three's two-pronged notice requirement, *see 4447 Assocs.,* 889 P.2d at 470 n. 5, First Security should not have to pay 4447 under the assignment. The trial court disagreed, stating that "the *America First* decision is not applicable to this action as the Court's decision interprets [subsection three], not [subsection one]."

¶ 7 On remand, First Security further argued the defense under subsection two that it had raised for the first time in petitioning for a writ of certiorari regarding *4447 I.* Considering the merits of this argument, but taking no new evidence, the trial court denied First Security its subsection two defense, stating that "the Settlement Agreement . . . was more than a modification of the contract within the meaning of [subsection two]; instead, the Settlement Agreement improperly attempted to *terminate and discharge* obligations owed under the Asset Purchase Agreement as found by the appellate court." The trial court then entered judgment for 4447.

¶ 8 First Security appeals, arguing the trial court incorrectly determined that (1) the

*America First* decision, 930 P.2d at 1198, and subsection three do not apply to this case; (2) First Security had no defense to payment under subsection two; and (3) First Security must pay 4447's attorney fees.

## ANALYSIS

### I. Applicability of *America First*

¶ 9 First Security first argues that *America First Credit Union v. First Security Bank,* 930 P.2d 1198 (Utah 1997), now governs this case and compels us to analyze the facts under subsection three. This is a question of law; we therefore review for correctness the trial court's determination that *America First* does not apply here. *See C & Y Corp. v. General Biometrics, Inc.,* 896 P.2d 47, 54 (Utah Ct.App.1995) (assessing "trial court's selection and statement of applicable law" under correctness standard).

¶ 10 In the *America First* case, America First Credit Union (America First) loaned money to Renaissance Exchange Inc. (Renaissance). *See* 930 P.2d at 1200. As collateral, Renaissance assigned to America First its savings certificate for $99,999 issued by First Security. *See id.* America First notified First Security of the assignment, which First Security flagged in its computer system. *See id.* First Security later inadvertently removed this notation without telling America First. *See id.* Renaissance then withdrew the $99,999 from its account, informing First Security that the assignment had been released, although it had not. *See id.* Later, after Renaissance had defaulted on its loans from America First, America First demanded that First Security pay it the proceeds of the assigned savings certificate, but First Security refused. *See id.*

¶ 11 First Security argued that it did not have to hold the certificate proceeds for America First because, although America First notified First Security of the assignment, it did not demand payments be made to America First, as required by subsection three. *See id.* at 1201–02. The supreme court agreed with First Security that subsection three requires not only that notice of the assignment be given, but that "the notice must state that payments are to be made to

the assignee." *Id.* However, it held that America First had met both prongs of the notice requirement. *See id.* at 1202.

■ ¶ 12 In contrast to *America First,* the current case does not involve a payment situation. Based on a series of disputes, First Security and Capitol entered a settlement agreement that covered a variety of topics, including the purported extinguishment of First Security's debt to Capitol. Thus, unlike *America First,* this is not a case in which First Security had paid a portion or all its debt to its original creditor, then was asked by an assignee to pay again. First Security is not asserting the defense of past payment to the original creditor, but extinguishment of the debt based on a settlement of disputes with the original creditor.

■ ¶ 13 As we stated in *4447 I,*

The two-pronged notice requirement mandated by [subsection three] is not applicable to our analysis. [Subsection three] sets forth the notice requirements for an assignee to receive payments directly from the account debtor. In the instant case, the question of whether Zions was entitled to receive payments from First Security as they came due does not merit consideration.

*4447 Assocs. v. First Sec. Fin.,* 889 P.2d 467, 470 n. 8 (Utah Ct.App.1995). We then held that extinguishment of the debt based on the settlement agreement was "a claim or defense not arising from [the] original [asset purchase agreement] with Capitol" and was thus controlled by subsection (1)(b). *Id.* at 472; *see* Utah Code Ann. § 70A–9–318(1)(b). Because subsection one does not mention the two-pronged notice required by subsection three, we applied the Uniform Commercial Code's less stringent catch-all notice requirement in holding that First Security had re-

ceived notice of the assignment. *See* Utah Code Ann. § 70A–1–201(25), (26) (Supp. 1998); *4447 Assocs.,* 889 P.2d at 473.

¶ 14 In sum, we stated in *4447 I* that this case is governed by the notice requirements of subsection one, not subsection three. The supreme court let our decision stand by summarily refusing to hear First Security's petition for a writ of certiorari. *See Zions v. First Sec. Fin.,* 899 P.2d 1231 (Utah 1995) (table).[2] The supreme court then set forth the notice requirements of subsection three in *America First,* ignoring First Security's invitation in those proceedings to mention the situation in this case. *See America First,* 930 P.2d at 1199–1202. Because of the factual distinctions we have outlined between this case and *America First,* we agree with the trial court that *America First* does not affect our original analysis. *See 4447 Assocs.,* 889 P.2d at 472–76. Consequently, *4447 I* is the law of the case: The trial court correctly determined based on *4447 I* that subsection one applies, not subsection three. *See Thurston v. Box Elder County,* 892 P.2d 1034, 1037 (Utah 1995) ("[P]ronouncements of an appellate court on legal issues in a case become the law of the case and must be followed in subsequent proceedings of that case.").

## II. First Security's Subsection Two Defense

¶ 15 First Security next argues the trial court should have concluded as a matter of law that it had established a subsection two defense. *See* Utah Code Ann. § 70A–9–318(2) (1997). This argument was first raised before the trial court on remand from *4447 I* in response to 4447's summary judgment motion asking that the trial court enter judgment for 4447 under *4447 I.*[3] The trial

---

**2.** We recognize that the supreme court's denial of a petition for certiorari is neither a decision on the merits nor precedential. *See Heaton v. Second Injury Fund,* 796 P.2d 676, 678 n. 2 (Utah 1990).

**3.** Our remand instructions to the trial court had limited remand proceedings to "entry of an appropriate judgment in favor of 4447 Associates in accordance with this opinion." *4447 Assocs. v. First Sec. Fin.,* 889 P.2d 467, 476 (Utah Ct. App.1995). There appears to be conflicting au-

thority as to whether a trial court may consider new issues on remand after the appellate opinion ordering remand has specified and limited the parameters of the trial court's activities on remand. *Compare Slattery v. Covey & Co.,* 909 P.2d 925, 928 (Utah Ct.App.1995) ("[I]t is only when issues are left open by an appellate decision that the trial court has discretion to deal with those issues as it sees fit, including allowing supplemental filings or proceedings."), *with State v. Labrum,* 959 P.2d 120, 122 n. 4 (Utah Ct.

court ruled that the evidence in the record did not support a subsection two defense.

¶ 16 Subsection two states that if a contract is executory the original parties to the contract may modify or substitute for the contract so long as the modification or substitution is in good faith and according to "reasonable commercial standards." *Id.* Subsection two applies regardless of whether the debtor has been notified of an assignment of the contract. *See id.* First Security contends that the settlement agreement was a good faith, commercially reasonable modification of or substitution for the asset purchase agreement. First Security thus maintains that its debt was extinguished under the settlement agreement, even assuming, as *4447 I* held, that it had received notice of the assignment. *See 4447 Assocs. v. First Sec. Fin.*, 889 P.2d 467, 472–75 (Utah Ct.App. 1995).

¶ 17 As we have stated, First Security did not assert a defense under subsection two until it petitioned the supreme court for a writ of certiorari to review our decision in *4447 I*. The upshot of First Security's plight in raising subsection two at the remand stage is that, throughout the original summary judgment and trial proceedings, it never presented evidence necessary to support its subsection two defense. Consequently, when it finally did argue the defense on remand—without presenting new evidence—it could muster only the following argument about the evidence:

> There was no evidence at trial that the Settlement Agreement was not entered into in good faith or was not commercially reasonable. Accordingly, this court should rule that the contract was properly modi-

fied and that, notwithstanding the fact that the court of appeals held that notice had been received, no judgment against First Security is appropriate.

■ ¶ 18 However, "[g]ood faith and compliance with reasonable commercial standards are separate [factual issues], both of which must be shown to establish a defense under the statute." *Brock v. Douglas Kohoutek, L.P.*, 225 Ga.App. 104, 483 S.E.2d 342, 346 (1997). Thus, First Security completely misses the mark by apparently asserting that 4447 had some duty at trial to present evidence to combat a defense First Security had not even raised. By presenting no evidence on these factual issues, First Security did not meet the evidentiary burden it bore as the party asserting the defense. Therefore, considering First Security's argument on the merits as the trial court did, we affirm the trial court's conclusion as a matter of law that the undisputed facts are insufficient to support First Security's subsection two defense.

### III.  Attorney Fees

■ ¶ 19 First Security finally contends the trial court incorrectly required First Security to pay 4447's attorney fees under the asset purchase agreement, a provision of which states: "In the event of a dispute among the parties arising under this Agreement, the party or parties prevailing in such dispute shall be entitled to collect their costs from the other parties, including without limitation court costs and reasonable attorney's fees." Specifically, First Security's sole argument is that under the undisputed facts the conflict in this case does not arise under

App.1998) ("Despite the doubts we expressed in *Labrum I* as to Labrum's ability to raise these arguments for the first time on remand, the sentencing court was entitled to consider Labrum's arguments. By considering these arguments rather than finding them waived, the sentencing court 'resuscitated' them for purposes of appeal." (Citations omitted.)). Even so, because we can dispose of the subsection two issue on another basis, we need not conclusively resolve the apparent conflict.

It should be noted, however, that in *Labrum* the State did not argue that the trial court was precluded from considering the new arguments on remand. Rather, the State addressed the

merits of the arguments and urged that their rejection by the trial court be affirmed. This fact, more than the authority cited in *Labrum*, may actually explain our generous characterization of the trial court's prerogatives on remand. In any event, we did not reach the merits of those arguments for other procedural reasons, and our conclusion that the trial court was entitled to consider the arguments was, therefore, wholly unnecessary to our decision. Moreover, this dicta in *Labrum* appears to be inconsistent with the settled and proper view about the scope of proceedings on remand, which we believe is accurately summarized by *Slattery*.

the asset purchase agreement, but under the circumstances of the settlement agreement and assignment. First Security argues these circumstances are outside the reach of the asset purchase agreement.[4]

¶ 20 " 'Whether attorney fees are recoverable in an action is a question of law, which is reviewed for correctness.' " *Wardley Corp. v. Welsh*, 962 P.2d 86, 92 (Utah Ct.App.1998) (quoting *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1257 (Utah Ct.App.1996)). Attorney fees allowed by contract may be awarded " 'only in accordance with the explicit terms of the contract and only to the extent permitted by the contract.' " *Id.* (quoting *Maynard v. Wharton*, 912 P.2d 446, 451 (Utah Ct.App.1996)).

¶ 21 At bottom, Zions/4447 brought this suit to enforce the payment terms of the asset purchase agreement. The circumstances of the settlement agreement and notification of the assignment were raised and litigated as defenses to payment under the asset purchase agreement. Thus, the dispute *did* arise under the asset purchase agreement: Zions/4447 wanted First Security to pay the debt it owed under the terms of the *asset purchase agreement*, while First Security did not want to pay Zions/4447 under those terms and raised defenses to that effect. We therefore conclude the trial court was correct in awarding 4447 its attorney fees under the asset purchase agreement. We further award 4447 its attorney fees on appeal, as it has requested pursuant to the asset purchase agreement, and we remand to the trial court to determine the amount to be awarded.

## CONCLUSION

¶ 22 The trial court correctly concluded that *America First Credit Union v. First Security Bank*, 930 P.2d 1198 (Utah 1997), does not apply to this case, because this case involves subsection one, while *America First* involved subsection three. *See* Utah Code Ann. § 70A–9–318(1), (3) (1997). Further, we affirm the trial court's legal conclusion that the undisputed facts are insufficient to support First Security's subsection two de-

fense. *See id.* § 70A–9–318(2). Finally, the trial court correctly awarded 4447 its attorney fees under the asset purchase agreement, and we also award 4447 its attorney fees on appeal and remand to the trial court to determine the amount to be awarded.

¶ 23 PAMELA T. GREENWOOD, Associate Presiding Judge, and GREGORY K. ORME, Judge, concur.

---

4. The reasonableness and amount of the attorney fees are not at issue in this appeal.