**STATE of Utah, Plaintiff and Respondent,**

v.

**Rodney K. STARKS, Defendant and Appellant.**

**No. 16609.**

Supreme Court of Utah.

March 24, 1981.

F. John Hill, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Robert R. Wallace, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant was charged with murder in the second degree, in violation of § 76-5-203, Utah Code Ann. (1953), as amended, and tried and found guilty of the lesser included offense of manslaughter. Defendant appeals on the ground that the trial court improperly instructed the jury as to self-defense and burden of proof.

Kaylene Griggs, a friend of defendant, worked at the Golden Fleece, a bar located directly above the establishment at which defendant was employed. On the evening of September 29, 1978, defendant was to pick up Ms. Griggs in order for her to wave his hair. When defendant called Ms. Griggs from downstairs to inform her he was ready to pick her up, she asked him to come upstairs to get her because she was being bothered by her ex-boyfriend, Joe Boykin. Defendant went upstairs, then left the bar with Ms. Griggs and proceeded out to the car, and Boykin followed. Boykin grabbed Ms. Griggs' arm after she was seated in the car and pulled her out. As Boykin pulled his fist back as if to strike, defendant raised his arm up toward him. Ms. Griggs testified that defendant told Boykin "if he wanted to talk to [her] to talk to [her] on his own time that right now [she] was on his time." When Boykin asked if Starks was Ms. Griggs' "old man," he told Boykin that he was not, and added: "[I]f I was I would treat her a lot better than you have."

Defendant testified that he shot Boykin because he believed Boykin was reaching into his pocket for a gun. Defendant explained the circumstances surrounding the shooting as follows: While defendant still had both hands on Ms. Griggs in an attempt to free her from Boykin, Boykin stuck his hand in his own pocket and told defendant not to put his hands in his pocket. When Boykin made that statement, defendant turned Ms. Griggs loose and stuck his hand in his pocket for his gun. Defendant pulled the gun out of the pocket but did not shoot immediately. He testified:

A. * * * I was standing there trying to figure out how to shoot—well, I was pulling the trigger and nothing would happen so Joe and I were jumping around out there and he still had his hand in his pocket and he said drop it and I had the gun out and I was trying to figure out how to shoot this thing and I pulled the trigger and nothing happened and then somehow I found—kept messing with it and it started shooting.

Q. Do you know what you did?

A. Yes. He still—he was jumping around telling me to drop it but, he never had pulled his hand out of his pocket.

\* \* \* \* \* \*

A. I shot two or three times and he never pulled his hand out of his pocket that is the reason I continued to shoot at it.

After those three shots, Boykin started running backwards with his hand still in his pocket. Defendant chased him and Boykin turned around to run across the street, pulling his hands out of his pocket:

A. ... when I chased him out of the parking lot and fired a couple of more shots, I ran out to the sidewalk, well, maybe out as far as maybe to the end of the sidewalk and I fired a couple more shots at him and he ran and he never turned around any more, he ran all the way across the street and when he got across the street, across 33rd Street, kind of diagnal, [sic] he stumbled on the sidewalk and fell but I was across—he was too far away if he had turned then to shoot me I was out of range so I didn't follow him any further.

Dr. Serge Moore, the pathologist who conducted the autopsy, testified that although four shots entered the victim's body, the fatal shot entered the left thigh and severed an artery.

Defendant adduced evidence demonstrating the violent propensities of Boykin and defendant's knowledge of certain instances of Boykin's violence. Additionally, defendant testified that he had been told that Boykin possessed a gun. Ms. Griggs also testified that she heard Boykin say that he

had refused to lend his gun to a friend because he felt he was *going to need it.*

 The trial court gave the jury an instruction on self-defense. The instruction, worded in the exact terms of the statute setting forth the elements of self-defense, included the proposition that self-defense is not a justification when the defendant is the aggressor or engaged in combat by agreement. See § 76–2–402, Utah Code Ann. (1953), as amended.[1] Defendant concedes that it is *not* erroneous in all instances to instruct the jury in the language of the statute if the jury is not likely to be confused or misled. *State v. Hughes,* 24 Utah 2d 235, 469 P.2d 503 (1970). If an instruction is supported by the evidence and its meaning is clear, an instruction in the form of statutory language is not improper. *State v. Minnish,* Utah, 560 P.2d 340 (1977). The instruction on self-defense adequately informed the jury of the applicable law in this case.

 Defendant contends that the portion of the instruction relating to aggression and mutual combat should not have been given in the instant case because it was not supported by the evidence. We disagree.

According to *State v. Schoenfeld,* Utah, 545 P.2d 193 (1976), one who willingly and knowingly provokes a combat may be an aggressor, and if one who initially was a nonaggressor escalates a fight beyond a level which would be justified in view of the nature of the original provocation, then he loses the right to claim the defense of self-defense. *Ruff v. State,* 65 Wis.2d 713, 223 N.W.2d 446 (1974).

---

1. Section 76–2–402 provides in pertinent part: Force in defense of person—Forcible felony defined.—(1) A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or serious bodily injury only if he reasonably believes that the force is necessary to prevent death or serious bodily injury to himself or a third person, or

to prevent the commission of a forcible felony.

(2) A person is not justified in using force under the circumstances specified in paragraph (1) of this section if he:

\* \* \* \* \* \*

(c) Was the aggressor or was engaged in a combat by agreement, unless he withdraws from the encounter and effectively communicates to such other person his intent to do so and the other notwithstanding continues or threatens to continue the use of unlawful force.

■ That defendant in this case armed himself and went to a location where he knew he would find the deceased does not of itself deprive him of his right to self-defense. One is entitled to go where he has a right to be without losing his right to assert self-defense in a murder prosecution. *State v. Bristol,* 53 Wyo. 304, 84 P.2d 757 (1938).

Nevertheless, defendant's verbal and physical acts at the scene of the homicide were sufficient to justify the instruction that if the defendant were found to be the aggressor he could not rely on the defense of self-defense. Even if defendant were initially justified in drawing the gun, the fact that Boykin did not produce a gun, but rather "jumped around" and told defendant, to put his gun away during the time defendant was trying to figure out how to operate his gun, could have been viewed by the jury as making the defendant the aggressor at that point in the encounter. The ensuing "chase" during which defendant fired additional shots also supports the conclusion that the defendant was the aggressor.

■ Defendant's second contention is that he was wrongly refused an instruction which would have apprised the jury that it could consider defendant's prior knowledge of the violent propensities of the victim in evaluating the reasonableness of defendant's apprehension at the time of the fatal encounter.[2] Evidence of defendant's knowledge of prior events establishing Boykin's violent propensities was freely admitted at trial. However, defendant was also entitled to an instruction which apprised the jury of its right to consider the defendant's knowledge of the victim's prior violent acts as they relate to the issue of self-defense. *State v. Singleton,* 66 Ariz. 49, 182 P.2d 920 (1947); *State v. Young,* Mo.App., 510 S.W.2d 732 (1974); *State v. Hall,* 31 N.C.App. 34, 228 S.E.2d 637 (1976). Although the instruction given properly informed the jury that defendant must have reasonably believed that the force he used against decedent was necessary to defend himself against decedent's imminent use of unlawful force, the instructions did not expressly focus the jury's attention on the prior violent acts of the victim which may reasonably have colored defendant's attitude at the time of the encounter.

■ The error, however, in failing to give the requested instruction did not, under the facts of this case, result in prejudice. We reach that conclusion based on two grounds. First, although the instructions given did not explicitly refer to the relevance of prior events, they did not foreclose consideration of such knowledge and events. Indeed the language of the instructions was sufficiently broad to allow such information to be considered by the jury in its determination of the overall reasonableness of defendant's conduct. Second, availability of the defense of self-defense in the instant case turned on whether the defendant harbored a reasonable expectancy of imminent danger, notwithstanding his knowledge of decedent's prior violent acts. On the facts of this case no such conclusion can be sustained. The right to self-defense ceases when the danger has passed or ceased to be imminent. *State v. Locke,* 7

---

**2.** The instruction proposed by defendant read:
You are instructed that all evidence known to RODNEY K. STARKS, on September 29, 1978, concerning the reputation and specific acts of violence and aggressiveness of Joseph L. Boykin is relevant to your determination of Rodney K. Starks' state of mind and the reasonableness of his conduct at the time of this incident.
On the basis of this evidence, considered in conjunction with the rest of the evidence in this case, if you find that there is a reasonable doubt that Rodney K. Starks committed the offense, then you must find Rodney K. Starks not guilty.

The instruction, as given, read in pertinent part:
You are instructed that actual danger is not necessary to establish self-defense. If one is confronted by the appearance of peril which arouses in his mind, as a reasonable person, an honest conviction that he is about to suffer death or serious bodily injury *and if a reasonable person in a like situation, seeing and knowing the same facts,* would be justified in believing himself in danger, his right to self defense is the same whether such danger is real or merely apparent. [Emphasis added.]

Or.App. 366, 489 P.2d 991 (1971). Even if defendant's prior knowledge of decedent's acts had caused him to believe that the placement of decedent's hand in his pocket initially presented the danger of imminent use of unlawful force, the failure of decedent to produce a gun or to attempt to exert any unlawful force against defendant between the time defendant exposed his gun, finally got it to shoot, and actually shot the victim, to say nothing of chasing him across the street while shooting at him, serve to vitiate any reasonable expectancy of imminent danger. Accordingly, the failure to instruct as requested, while error, was harmless and precludes us from reversing on that ground. Section 77–35–30(a), Utah Code Ann. (1953), as amended.

Defendant's next claim is that the court erred in not instructing that the defendant could be found guilty only if on the evidence there was no reasonable alternative hypothesis to that of guilt. Defendant claims that the failure to give the instruction caused the jury to misconstrue defendant's burden regarding the claim of self-defense. Clearly, a defendant does not bear the burden of persuasion in presenting an affirmative defense. A fundamental precept of our criminal law is that the State must prove all elements of a crime beyond a reasonable doubt. *State v. Torres*, Utah, 619 P.2d 694 (1980). The defendant's evidence, whether it simply controverts the State's case or asserts an affirmative defense, need only raise a reasonable doubt as to any element of the crime to justify an acquittal. *State v. Torres, supra; State v. Curtis*, Utah, 542 P.2d 744 (1975). The prosecutor's burden, on the other hand, whether the evidence be direct or circumstantial, or a combination thereof, is to prove all elements of the crime charged beyond a reasonable doubt, whether the defense is a denial or an affirmative defense. *State v. Torres, supra; State v. Eagle*, Utah, 611 P.2d 1211 (1980).

An instruction based on the reasonable alternative hypothesis test is appropriate when proof of a material issue is based solely on circumstantial evidence, *State v. Bender*, Utah, 581 P.2d 1019 (1978); *State v. Garcia*, 11 Utah 2d 67, 355 P.2d 57 (1960). Generally, other forms of instructions can effectively accomplish the same purpose of conveying to the jury the meaning of "proof beyond a reasonable doubt." *State v. Eagle, supra*. The testimony presented at trial does not support defendant's claim that the evidence was wholly circumstantial, and the instruction given to the jury on burden of proof as it relates to self-defense properly conveyed the meaning of proof beyond a reasonable doubt.

Finally, defendant's claim of prejudice resulting from cumulative errors fails because there was no error in the instructions given the jury.

The judgment is affirmed.

HALL, J., and DURHAM, District Judge, concur.

MAUGHAN, C. J., does not participate herein.

DURHAM, District Judge, sat.

CROCKETT and WILKINS, JJ., heard the arguments but retired before the opinion was filed.