**STATE of Utah, Plaintiff and Appellee,**

v.

**Troy LABRUM, Defendant and Appellant.**

**No. 970099–CA.**

Court of Appeals of Utah.

May 7, 1998.

Rehearing Denied July 15, 1998.

---

Robert K. Heineman and Kristine M. Rogers, Salt Lake City, for Appellant.

Jan Graham and Thomas B. Brunker, Salt Lake City, for Appellee.

Before DAVIS, P.J., and JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Troy Labrum appeals the order that increased the minimum term of his sentence pursuant to Utah Code Ann. § 76–3–203.1 (1995), the so-called "gang enhancement" provision. We vacate the sentence enhancement.

## FACTS

Labrum challenges his sentence enhancement for the second time. *See State v. Labrum,* 881 P.2d 900, 905–06 (Utah Ct.App. 1994) (*Labrum I* ), *vacated and remanded,* 925 P.2d 937 (Utah 1996). As before, we recite the facts underlying Labrum's sentence enhancement in the light most favorable to the jury verdict convicting him. *See State v. Ramirez,* 948 P.2d 375, 376 (Utah Ct.App.1997).

On the morning of September 20, 1992, Labrum and David Mills approached Joe Kelly at the house shared by Labrum, Kelly, and seventeen-year-old Joshua Behunin. Labrum and Mills asked to borrow Kelly's Mercury Topaz to—as Labrum stated—"go shoot somebody." During this conversation, Behunin stood in the kitchen, fifteen to twenty feet away from Labrum, Mills, and Kelly. About an hour and a half later, Labrum, Mills, and Behunin left in Kelly's Topaz.

As they traveled east on 2100 South in Salt Lake City, Mills drove the Topaz while Labrum sat in the front passenger seat and Behunin sat in the back seat. At the intersection of 2100 South and West Temple, Labrum displayed gang-related hand gestures to the passengers of a nearby Mitsubishi. The Topaz followed the Mitsubishi until both cars stopped, side by side, at the intersection of 2100 South and 700 East. Labrum then leaned out of the passenger window, extended his arms over the Topaz, and fired five bullets at the Mitsubishi. Bullets struck the back of one of the Mitsubishi passengers and grazed the head of another. Mills and his passengers then sped off.

The following day, Labrum, accompanied by Behunin, brought a newspaper article about the shooting into the bedroom of Kevin McCray, another of Labrum and Behunin's roommates. While flaunting the article, Labrum bragged, "[T]his is what we did; this is the shooting that we did." Behunin, who said nothing to confirm or deny his involvement, but who appeared to McCray to

join Labrum in gloating,[1] burned the newspaper article before leaving McCray's bedroom.

In due course, the trio was arrested and, on February 18, 1993, a jury convicted Labrum and Mills of attempted criminal homicide.[2] After sentencing Labrum to a prison term of one to fifteen years, the trial court increased the minimum duration of his sentence to six years, pursuant to Utah Code Ann. § 76-3-203.1 (Supp.1993). Labrum appealed this "group crime enhancement,"[3] arguing section 76-3-203.1 is unconstitutional and that the trial court erred in imposing the enhancement without entering written findings demonstrating that Labrum committed his offense in concert with two or more other persons. *See Labrum I,* 881 P.2d at 902. However, Labrum failed to raise the lack of written findings or the constitutionality of section 76-3-203.1 prior to the imposition of sentence. *See id.* at 905-06. Consequently, in *Labrum I* we declined to address either issue and affirmed the group crime enhancement, as well as a firearm enhancement not at issue in this appeal. *See id.* at 904-06.

On certiorari, the Utah Supreme Court overruled our decision concerning the group crime enhancement, holding that, since section 76-3-203.1 explicitly requires the entry of written findings, the trial court's failure to comply constituted plain error. *See State v. Labrum,* 925 P.2d 937, 940-41 (Utah 1996) (*Labrum II* ). Thus, the Supreme Court vacated the group crime enhancement and remanded for resentencing. *See id.* at 941.

On remand, Labrum objected to the group crime enhancement, arguing that insufficient evidence supported it and that section 76-3-203.1 is unconstitutional.[4] On January 23, 1997, the sentencing court issued a "Court Order for Gang Enhancement," again increasing Labrum's minimum sentence from one year to six years and concluding section 76-3-203.1 is constitutional. The court based its decision on several "factual findings"[5] regarding Behunin's actions, including his presence with Labrum and Mills during the shooting's planning and commission, his presence when Labrum boasted of committing the shooting, and his burning of the newspaper article.

Labrum now appeals the sentencing court's order, making essentially two arguments: First, that the sentencing court's findings are legally insufficient to sustain the

1. Testimony relative to Behunin's behavior on this occasion is very sparse. The only testimony is that of McCray, who testified on direct examination that only Labrum spoke of the shooting, but stated on cross-examination, without further explanation, that both Labrum and Behunin "gloated" about the shooting. Because the context of McCray's second comment does not suggest he meant to correct his first statement, the only alternative to viewing McCray's testimony as inconsistent on the question of Behunin's conduct is to conclude that, although Behunin said nothing about his role in the shooting, he engaged in some posturing or gesturing that registered with McCray as gloating. The record is silent on whether, and on what basis, McCray took Behunin's apparent body language to be an admission of participation in, as opposed to mere presence during and generalized enthusiasm over, the shooting.

2. The State also charged Behunin with attempted homicide, and the juvenile court certified him to stand trial as an adult. However, the State ultimately dismissed the case against Behunin.

3. Previous opinions have euphemistically referred to § 76-3-203.1 sentence enhancements as "gang enhancements." *See, e.g., Alvarez v. Galetka,* 933 P.2d 987, 988 (Utah 1997); *State v.*

*Ramirez,* 924 P.2d 366, 370 (Utah Ct.App.1996). Although curbing gang activity was an objective underlying § 76-3-203.1's passage, the statute certainly does not apply exclusively to gang members. Rather, it more generally targets the heightened danger posed by crimes committed in groups. *See infra,* note 8. Accordingly, we refer to the enhancement as the "group crime enhancement."

4. Despite the doubts we expressed in *Labrum I* as to Labrum's ability to raise these arguments for the first time on remand, *see* 881 P.2d at 904, the sentencing court was entitled to consider Labrum's arguments. *See Hidden Meadows Dev. Co. v. Mills,* 590 P.2d 1244, 1248 (Utah 1979); *Eckard v. Smith,* 545 P.2d 501, 502 (Utah 1976). By considering these arguments rather than finding them waived, the sentencing court "resuscitated" them for purposes of appeal. *See State v. Seale,* 853 P.2d 862, 870 (Utah), *cert. denied,* 510 U.S. 865, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993).

5. The judge presiding over Labrum's sentencing on remand was not the same judge who presided over his trial. Consequently, the sentencing judge based these "factual findings" on a review of the trial transcript without the benefit of hearing the witnesses and having an opportunity to assess their credibility.

group crime enhancement, and second, that section 76–3–203.1 violates numerous state and federal constitutional provisions.

## ANALYSIS

Labrum contends the sentencing court erroneously concluded that he acted "in concert with two or more persons," arguing that, for the purposes of section 76–3–203.1, Behunin did not act in concert with Labrum and Mills. The factual findings underlying the court's conclusion are largely undisputed. The only disputed finding is whether, as the sentencing court found, Behunin joined Labrum in flashing gang signs at the Mitsubishi passengers. A careful review of the record shows that this finding is incorrect.[6] The sentencing court based this finding on testimony from one of the Mitsubishi passengers stating that "they" flashed gang signs, possibly referring to all three of the Topaz occupants. However, this same witness later clarified that only one of the Topaz passengers— Labrum—flashed gang signs.

■ At issue, then, is the sentencing court's legal conclusion that section 76–3–203.1 applies, given the court's other findings. We review the trial court's conclusion for correctness. *See State v. Alvarez,* 872 P.2d 450, 460 (Utah 1994).

Section 76–3–203.1 provides, in pertinent part:

(1)(a) A person who commits any offense listed in Subsection (4)[7] in concert with two or more persons is subject to an enhanced penalty for the offense as provided below.

(b) "In concert with two or more persons" as used in this section means the defendant and two or more other persons would be *criminally liable* for the offense as parties under Section 76–2–202.

Utah Code Ann. § 76–3–203.1(1)(a)-(b) (1995) (emphasis added). Section 76–2–202 provides:

Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

*Id.* § 76–2–202.

■ Hence, in addition to mandating that the accomplice had the required mental state, criminal liability under section 76–2–202 requires a showing that the accomplice participated in one of the ways listed therein. Moreover, for a person to be "criminally liable" under section 76–2–202, the State must prove each element of the offense beyond a reasonable doubt. *See id.* § 76–1–501(1) (1995). Accordingly, because Behunin did not directly commit the shooting, to impose the group crime enhancement upon Labrum, the evidence had to show—beyond a reasonable doubt—that Behunin solicited, requested, commanded, encouraged, or intentionally aided Labrum and/or Mills in committing the shooting. The sentencing court's findings are insufficient to satisfy this standard.

"Mere presence, or even prior knowledge, does not make one an accomplice when he neither advises, instigates, encourages, or assists in perpetration of the crime." *State v. Kerekes,* 622 P.2d 1161, 1166 (Utah 1980). Thus, Behunin's presence during the shooting's planning and commission, whether he knew it was going to occur or not, was insufficient to impose criminal liability under section 76–2–202. Likewise, Behunin's presence during Labrum's subsequent boasting, even if accompanied by some measure of strutting or posturing on Behunin's part, and his burn-

---

**6.** Ordinarily, we would review a finding such as this only for clear error. *See State v. Alvarez,* 872 P.2d 450, 460–61 (Utah 1994). However, the logic underlying this deference to the sentencing court does not apply when, as in this case, the court "bases its 'ultimate conclusions ... upon essentially undisputed facts, in particular [a] transcript.'" *State v. Gutierrez,* 864 P.2d 894, 898 (Utah Ct.App.1993) (citation omitted). Thus, "because this court stands in the same position

as the [sentencing] court in reviewing the transcript ... [the court's] conclusions present questions of law which we review under a correction of error standard." *Id.*

**7.** Labrum does not dispute that his offense is among the multitude of offenses cataloged in Utah Code Ann. § 76–3–203.1(4)(a)-(w) (1995).

ing the newspaper article, do not establish criminal liability under section 76–2–202.

The sentencing court's findings show that Behunin was present with Labrum and Mills when the shooting occurred. If the Legislature had simply chosen to enhance the sentences of those who commit crimes in the presence of two or more other persons, it would be proper to enhance Labrum's sentence.[8] Instead, the Legislature opted for an enhancement statute that is more technically focused. Under this statute, it is not enough that others were present when the crime was committed. Rather, the quality of their involvement must rise to the level of participation described in section 76–2–202, they must possess a sufficiently culpable mental state, and the prosecution must prove the foregoing beyond a reasonable doubt. The State simply did not satisfy those requirements in this case, and the sentencing court's findings thus cannot sustain imposition of the enhancement.

Accordingly, given section 76–3–203.1's requirements, we conclude the sentencing court's findings are insufficient to show Lab-

rum committed the shooting in concert with two or more other persons. We therefore vacate the group crime sentence enhancement. Because we reach this decision on rather straightforward statutory grounds, we do not reach Labrum's constitutional arguments.[9] *See West v. Thomson Newspapers,* 872 P.2d 999, 1004 (Utah 1994).

## CONCLUSION

Because the sentencing court's findings do not sustain its legal conclusion that the State met its burden under section 76–3–203.1, imposing the group crime enhancement upon Labrum was improper. The enhancement is accordingly vacated.[10]

DAVIS, P.J., and JACKSON, J., concur.

---

**8.** Enhancing sentences based on such a straightforward rationale, instead of the rather strict criteria outlined in section 76–3–203.1, has strong policy justification. By sheer force of numbers, crimes committed in the presence of others increase and intensify the danger to victims, innocent bystanders, and perpetrators alike. Also, " '[w]hat makes the joint action of a group of . . . persons more fearsome than the individual actions of those . . . persons is the division of labor and the mutual psychological support that collaboration affords.' " *United States v. Townsend,* 924 F.2d 1385, 1394 (7th Cir.1991) (quoting Leo Katz, *Bad Acts and Guilty Minds: Conundrums of the Criminal Law* (1987)). Group crimes can be far more efficient than individual crimes since members can profit from dividing tasks, sharing information, and specializing in certain criminal endeavors. *See* Joseph L. Barloon, Note, *An Economic Analysis of Group Crime and the Federal Sentencing Guidelines,* 84 Geo.L.J. 2261, 2261–68 (1996).

**9.** While we do not otherwise address the constitutionality of section 76–3–203.1, we briefly ad-

dress Labrum's argument that the Legislature intended the statute to reach only gang members. We simply note that constitutional concerns would arise, rather than be dispelled, if courts construed the statute to apply to a crime committed by members of a "street gang," but not to the same crime committed by, for instance, members of a Boy Scout troop.

**10.** Thus, Labrum's minimum prison term for his attempted criminal homicide conviction is reduced from six years to one year, with a maximum of fifteen years. This term is to be followed by an indeterminate term of one-to-five years, to run consecutively, by reason of the firearm enhancement. *See Labrum I,* 881 P.2d at 902 n. 4; *Labrum II,* 925 P.2d at 938 n. 4; Utah Code Ann. § 76–3–203(2) (Supp.1997). *See also State v. Willett,* 694 P.2d 601, 602–03 (Utah 1984) (ruling that, despite the statute's language, legislative history of firearm enhancement statute indicates maximum firearm enhancement courts may impose is five years—not a one-year enhancement followed by an additional one-to-five year enhancement).