1999 UT 24

**STATE of Utah, Plaintiff and Appellee,**

v.

**Cameron Thomas LOPES, Defendant and Appellant.**

No. 960551.

Supreme Court of Utah.

March 16, 1999.

Rehearing Denied June 23, 1999.

Jan Graham, Atty. Gen., Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for plaintiff.

Linda M. Jones, Michael A. Peterson, Kimberly A. Clark, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

¶ 1 Cameron Thomas Lopes appeals from a judgment and conviction for murder, a first degree felony, and enhanced sentences imposed by the district court pursuant to sections 76–3–203(1) and –203.1 of the Utah Code. Lopes asks this court to reverse the group criminal activity enhancement on the basis that section 76–3–203.1 violates both the federal and Utah constitutions. We hold that the application of section 76–3–203.1 in this case did deprive Lopes of certain fundamental constitutional rights. Furthermore, we hold subsection (5)(c) of section 76–3–203.1 violates the Utah Constitution. We, therefore, reverse and remand for a new trial.

¶ 2 In March of 1996, the State charged Lopes and several other individuals with murder, a first degree felony, in violation of section 76–5–203 of the Utah Code. The information alleged that early in the morning of February 22, 1996, Lopes, along with three other persons who were parties to the offense, went to the residence of Jimmy De-Herrera with the intent to kill the occupants. One of the defendants fired two shots from a .20 gauge shotgun into an open window. Both shots hit and killed Joey Miera, who was asleep on the floor. The information further alleged that the defendants shot Miera in retaliation for another shooting one week earlier that killed one of the defendant's friends. The information also gave notice to Lopes that he was subject to enhanced penalties for the use of a firearm, pursuant to Utah Code Ann. § 76–3–203(1) (Supp.1998) ("firearm enhancement"), and for having acted in concert with two or more persons, pursuant to Utah Code Ann. § 76–3–203.1 (1995) ("group criminal activity" or "gang" enhancement).[1] Lopes waived his preliminary hearing and agreed to be bound over to the district court.

¶ 3 In the district court, Lopes moved to strike the gang enhancement as unconstitutional under both the state and federal constitutions. The court denied his motion. Thereafter, he pleaded guilty to the homicide offense, with enhancements, in exchange for dismissal of charges pending against him in another case. Lopes conditioned his plea pursuant to State v. Sery, 758 P.2d 935 (Utah Ct.App.1988).[2] Lopes's conditional plea pre-

---

**1.** Lopes refers to section 76–3–203.1 as the "gang" enhancement statute. The State correctly points out in its brief that the legislature did not create a "gang" enhancement, although the statute is popularly known by that name. We agree with the State that referring to the statute as a "group criminal activity" enhancement is more accurate than "gang" enhancement. Nevertheless, we have previously referred to the statute under its commonly known name, see State v. Alvarez, 872 P.2d 450, 461 (Utah 1994), and we will continue to do so for ease of reference.

**2.** The Sery decision, which this court has endorsed, see State v. Rivera, 943 P.2d 1344, 1344–45 (Utah 1997); Utah R.Crim. P. 11(i), permits a criminal defendant to plead guilty while preserving issues for appeal. In this case, Lopes specifically preserved his right to appeal the constitutionality of the gang enhancement statute.

served his right to challenge the constitutionality of the gang enhancement statute.

¶ 4 Thereafter, the trial court issued findings that Lopes was subject to an enhanced penalty under section 76–3–203.1 and entered judgment against him.[3] The trial court sentenced Lopes to an indeterminate term of five years to life. The court also enhanced the sentence under the gang enhancement statute, sentencing Lopes to an additional four years to "run consecutively and not concurrently with the basic sentence." Lopes appeals that order.

¶ 5 Lopes contends that the gang enhancement statute creates a separate criminal offense by combining a separate mental element—"in concert"—with a criminal act and, therefore, for the statute to satisfy state and federal due process concerns, the State must prove the elements of the enhancement beyond a reasonable doubt, as with any other crime. He also asserts that section 76–3–203.1(5)(c) interferes with his right to a jury trial, as guaranteed by article I, section 12 of the Utah Constitution.[4]

¶ 6 A constitutional challenge to a statute presents a question of law, which we review for correctness. *See State v. Mohi*, 901 P.2d 991, 995 (Utah 1995). When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubts in favor of constitutionality. *See Society of*

*Separationists, Inc. v. Whitehead*, 870 P.2d 916, 920 (Utah 1993); *Mountain States Tel. & Tel. Co. v. Garfield County*, 811 P.2d 184, 187 (Utah 1991).

¶ 7 In response to Lopes's argument that in enacting the gang enhancement statute, the legislature created a new crime, the State notes that the legislature specifically expressed an intent that the gang enhancement not be a separate offense. The legislature does have broad authority to define crimes and prescribe punishments. *See State v. Bishop*, 717 P.2d 261, 263–64 (Utah 1986); *State v. Angus*, 581 P.2d 992, 994–95 (Utah 1978). However, although the legislature specifically stated in the statute that it intended section 76–3–203.1 to be an enhancement, this is not dispositive as to what the legislature actually did.

¶ 8 The gang enhancement statute provides in part:

(1) (a) A person who commits any offense listed in Subsection (4) *in concert* with two or more persons is subject to an enhanced penalty for the offense as provided below.

(b) "*In concert* with two or more persons" as used in this section means the defendant and two or more other persons would be criminally liable for *the offense* as parties under Section 76–2–202.

Utah Code Ann. § 76–3–203.1(1)(a) & (b) (1995) (emphasis added). Section 76–2–202,

---

3. Lopes objected to the first paragraph of the judge's findings and conclusions regarding applicability of the gang enhancement statute because the judge had suggested that the issue was waived. As first written, that paragraph stated:

> In his Statement of Defendant [sic] executed in connection with his entry of guilty plea and in his colloquy with the court, the defendant, although challenging its constitutionality, acknowledged the applicability of the gang enhancement as pleaded by the state.

After objection, the first paragraph was changed to read:

> Defendant admitted that he went with at least two other people to Joey Miera's home for the purpose of retaliating for a fellow gang members shooting, and with the stated purpose of "[gett]ing the punks."

By making this modification, the trial court acknowledged that Lopes never conceded that all the elements of the enhancement statute were satisfied, i.e., that the other individuals shared

the requisite mental state for murder. This means that the issue of the applicable burden of proof is squarely before us today. *See infra* ¶ 9.

4. Lopes raises a series of other claims. He argues that the statute interferes with his fundamental due process rights because it denies him his right to a preliminary hearing, which article I, section 13 of the Utah Constitution guarantees. In the alternative, he argues that the statute identifies additional elements of the underlying offense that the State must prove beyond a reasonable doubt to the same trier of fact who decided guilt on the predicate crime. And finally, Lopes argues on appeal that the statute violates the federal Due Process Clause because it is vague and overly broad and that it violates the Equal Protection Clause of the United States Constitution and the uniform operation of laws provision of the Utah Constitution. Because we decide this case based on the fundamental rights arguments in the text, we do not need to address these additional constitutional challenges.

referred to in section 76–3–203.1(1)(b), states that a person who acts "with the mental state required for the commission of an offense," and "either directly commits the offense, [or] solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." *Id.* § 76–2–202. In summary, section 76–3–203.1(1)(a) requires that all three actors must (i) have possessed a mental state sufficient to commit the same underlying offense and (ii) have directly committed the underlying offense or solicited, requested, commanded, encouraged, or intentionally aided one of the other two actors to engage in conduct constituting the underlying offense. At a minimum, under the statute, the State must prove that all three actors are guilty of "aiding and abetting." This was the effective holding of our decisions in *State v. Labrum,* 925 P.2d 937 (Utah 1996) ("*Labrum I*") and *State v. Alvarez,* 872 P.2d 450 (Utah 1994). In *Labrum I,* we made it clear that "in concert" under the gang enhancement statute means that the defendant acted with at least two other people and "that those other persons must also be liable for the underlying offense." *Id.* at 940; *see also California v. Zermeno,* 61 Cal.App.4th 623, 628, 71 Cal. Rptr.2d 672 (Cal.Ct.App.1998) (holding that statute imposing enhanced sentence upon showing of "pattern of criminal gang activity" required State to show beyond a reasonable doubt that at least one other actor was guilty of "aiding and abetting" defendant).

¶ 9 This leads us to the burden of proof issue. In *Labrum I,* we did not address the burden of proof by which the State must prove the "in concert" element of the gang enhancement statute, but the court of appeals did address that question in a subsequent appeal. In *Labrum I,* we stated that before imposing the gang enhancement, the statute required "the sentencing judge [to] make discrete ... findings" that are "indispensable to the gang enhancement statute because they establish the legal basis that justifies imposition of the prescribed penalty." *Labrum I,* 925 P.2d at 940. We re-

manded *Labrum I* for further proceedings because "no specific finding was entered with respect to the complicity of the other two persons who accompanied Labrum." *Id.* at 941. On remand, the trial court made factual findings regarding the other two actors' participation and then enhanced Labrums sentence. *See State v. Labrum,* 959 P.2d 120, 121 (Utah Ct.App.1998) ("*Labrum II*"). Labrum again appealed.

¶ 10 Before the court of appeals, Labrum argued that the sentencing court's findings were legally insufficient to fix accomplice liability. Labrum premised his argument on both the language of the statute and due process. The court of appeals reversed the enhancement on grounds that the findings were insufficient. It did not address the constitutional question; instead, it held:

> Under this statute, it is not enough that others were present when the crime was committed. Rather, the quality of their involvement must rise to the level of participation described in section 76–2–202,
>
> . . .

*Id.* at 124. The court of appeals then went on to say that all three actors "*must possess a sufficiently culpable mental state, and the prosecution must prove the foregoing beyond a reasonable doubt.*" *Id.* (emphasis added). Because the court of appeals appeared to rely on statutory interpretation to fix the burden of proof, it had no occasion to address Labrum's constitutional challenges.[5]

■ ¶ 11 Today, Lopes presents to this court a challenge to the gang enhancement statute that is essentially identical to the one passed upon by the court of appeals in *Labrum II.* He contends that the State must prove all the elements of accomplice liability, including the mental state, beyond a reasonable doubt. We agree with Lopes and conclude that the statutory "enhancement" requires proof of the other actor's criminal culpability, and that the State must prove their criminal culpability beyond a reasonable doubt. This conclusion finds support in

---

5. The court of appeals decided *Labrum II* after oral argument in the present case. Pursuant to rule 24(h) of the Utah Rules of Appellate Proce-

dure, Lopes notified this court of the *Labrum II* decision.

our decision in *State v. Angus,* 581 P.2d 992 (Utah 1978).

¶ 12 In *Angus,* the defendant was charged with aggravated assault, and the State sought a firearm enhancement. The defendant argued that the firearm enhancement statute created a separate offense that the State had to plead as a separate crime, not as an enhancement. This court disagreed. *See id.* at 994. In rejecting the claim of a separate crime that had to be separately charged, we said: "When the matter is looked at correctly and realistically, it is seen that there is but one criminal act charged, but describing it accurately brings it within the higher penalty prescribed by law: to-wit, an aggravated assault which was committed with a firearm." *Id.* at 994 (footnote omitted). *Angus* acknowledged that the legislature has the prerogative "to prescribe the punishment for crimes" and thereby may "increase the degree of crime." *Id.* We said that the legislature, by enacting the firearm enhancement, had increased the degree of the crime by establishing a separate set of elements that, if proven, warranted a higher punishment. Importantly for present purposes, we concluded in *Angus* that while the State did not need to separately charge the enhancement as a crime, it did need to prove each element, including the defendant's use of a firearm, beyond a reasonable doubt because the crime was increased as to degree by the presence of the firearm. *See id.* at 995.

¶ 13 Returning to the present case, as both a state and federal constitutional matter, we conclude that due process requires that the prosecution prove every element of the charged crimes beyond a reasonable doubt. *See* Utah Const. art. I, § 7; U.S. Const. amend. V, XIV; *see also State v. Herrera,* 895 P.2d 359, 368 (Utah 1995) ("due process mandates that the prosecution prove every element of the charged crimes beyond a reasonable doubt."); *State v. Swenson,* 838 P.2d 1136, 1138 (Utah 1992) (holding that State has burden of proving all elements of a crime); *State v. Starks,* 627 P.2d 88, 92 (Utah 1981) ("A fundamental precept of our criminal law is that the state must prove all

elements of a crime beyond a reasonable doubt.").

¶ 14 Furthermore, and independently, as a statutory matter, the Code requires that the State prove each element of the charged crime beyond a reasonable doubt. *See* Utah Code Ann. § 76–1–501 (1995) (requiring that each "element of the offense charged" be "proved beyond a reasonable doubt," including "[t]he conduct, attendant circumstances, and [t]he culpable mental state required.").

¶ 15 When the legislature passed the gang enhancement provision, it acted just as it did when it passed the firearm enhancement provision: it mandated imposition of an enhancement only upon proof of elements over and above those required for the crime of lesser consequence. In essence, it created a specific new crime or a crime of a higher degree. As such, each of the elements must be proved beyond a reasonable doubt. Here, they were not. Therefore, we find the trial courts imposition of the gang enhancement to have been in error.

¶ 16 Finally, we turn to Lopes's assertion that the gang enhancement statute interferes with his right to a jury trial. He argues that since the statute creates a separate and new offense, each element must be found beyond a reasonable doubt by a jury, not the trial judge. We agree. The Utah Constitution provides "[i]n criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury." Utah Const. art. I, § 12. In criminal jury trials, questions of fact and the weight of evidence are to be decided by the jury, absent waiver. *See* Utah Code Ann. § 77–17–10 (1995); *State v. Green,* 78 Utah 580, 589–90, 6 P.2d 177, 181 (1931) ("It is the sole and exclusive province of the jury to determine the facts in all criminal cases, whether the evidence offered by the state is weak or strong, is in conflict or is not controverted.").

¶ 17 The gang enhancement statute, section 76–3–203.1(5)(c), provides:

(c) The sentencing judge rather than the jury shall decide whether to impose the enhanced penalty under this section. The imposition of the penalty is contingent upon a finding by the sentencing judge that this section is applicable. In conjunction with sentencing the court shall enter

written findings of fact concerning the applicability of this section.

This section of the enhancement statute directs the judge to become the fact finder, expressly taking that power away from the jury. In this case, the judge followed the statute and became the fact finder. Even though Lopes pled guilty to the underlying offense, his plea did not establish the requisite mental state of the other actors, as is necessary to support imposition of the gang enhancement. His plea, then, did not establish all of the elements of the enhancement offense beyond a reasonable doubt. The trial judge supplemented the plea by making the factual finding that the elements of the gang enhancement were established, and implemented the enhancement. This clearly violated article I, section 12 of the Utah Constitution because, absent waiver, only a jury has the ability to determine when elements of a crime are established beyond a reasonable doubt. Therefore, we find subsection (5)(c) of § 76–3–203.1 of the Code unconstitutional.

¶ 18 Having held subsection (5)(c) unconstitutional, we now determine if the remainder of the gang enhancement statute can remain in effect. The general rule is "that statutes, where possible, are to be construed so as to sustain their constitutionality. Accordingly, if a portion of the statute might be saved by severing the part that is unconstitutional, such should be done." *Celebrity Club Inc. v. Utah Liquor Control Comm'n,* 657 P.2d 1293, 1299 (Utah 1982). This basic rule applies to criminal and civil statutes equally. *See State v. Nielsen,* 19 Utah 2d 66, 69, 426 P.2d 13, 15 (1967) (court severed unconstitutional section of criminal statute); *State v. Green,* 793 P.2d 912, 917 (Utah Ct. App.1990) (holding that basic rule [of sever-

ing unconstitutional provision] applies to the construction of criminal statutes).

¶ 19 To determine if a statute is severable from its unconstitutional subsection, we look to legislative intent. If the intent is not expressly stated, we then turn to the statute itself, and examine the remaining constitutional portion of the statute in relation to the stricken portion. If the remainder of the statute is operable and still furthers the intended legislative purpose, the statute will be allowed to stand. *See Union Trust Co. v. Simmons,* 116 Utah 422, 429, 211 P.2d 190, 193 (1949), *quoted in Stewart v. Utah Pub. Serv. Comm'n,* 885 P.2d 759, 779–80 (Utah 1994).

¶ 20 The criminal code contains a separability clause, but it does not aid us in this situation.[6] Furthermore, since there is no express intent on the severability question in the gang enhancement statute, we examine the statute itself to determine if severing section 76–3–203.1(5)(c) will destroy the purpose of the statute. A close reading of 76–3–203.1 indicates that severing subsection (5)(c) will not make the objective of the statute unconstitutional.[7] The statute imposes higher penalties if a person commits certain offenses "in concert with two or more persons." Utah Code Ann. § 76–3–203.1(1)(1995). It makes no difference in the application of the statute or the satisfaction of its purposes if the trial judge is the fact finder or if the questions of fact are left to the jury. We therefore find the remaining portion of the gang enhancement statute constitutional.

¶ 21 We address the proper course of further proceedings in this case. We reverse and remand for a new trial on the gang enhancement charge. Our remand does not

---

6. Section 76–1–108 states: "If any provision of this act, or the application of any provision to any person or circumstance, is held invalid, the remainder of this act shall not be affected thereby." Although we have never interpreted this provision in the past, we now find that the only purpose of this section is to preserve the entire criminal code in case any one provision is declared unconstitutional. On its face, it does not give any direction in this circumstance, .where we are trying to determine the severability of one subsection from a larger section.

7. Section 76–3–203.2 of the Utah Code, which imposes enhanced penalties for the use of dangerous weapons in offenses committed on school premises, is almost identical in structure to the gang enhancement statute. A key difference is that section 76–3–203.2 does not include a section making the judge the fact finder in a particular case. It seems clear that holding subsection (5)(c) of the gang enhancement statute invalid as unconstitutional will not frustrate the legislative purpose of the statute, as section 76–3–203.2 operates without making the trial judge the fact finder.

place the defendant in double jeopardy, because the failure to prove an essential element of the gang enhancement charge was "trial error." *See State v. Higginbotham,* 917 P.2d 545, 550–51 (Utah 1996) (decision was reversed and remanded due to failure to prove an essential element of the charge). It was not the fault of the prosecution that all elements of the gang enhancement statute were not satisfied. Until this decision, no one had notice that the enhancement statute requires proof of all elements beyond a reasonable doubt, or that this determination could not be made by a judge absent a waiver of the right to a jury trial. Therefore, the State should not be denied the right to a fair adjudication because of double jeopardy. *See State v. Lamorie,* 610 P.2d 342, 347 (Utah 1980) ("The state and the accused share the right to a fair, error-free determination of the guilt or innocence of the accused, and the double jeopardy clause may not deny either side that right.").

¶ 22 We hold that the gang enhancement statute creates a new and separate offense and, therefore, the Code requires each element of this crime be proved beyond a reasonable doubt. Since the elements of the crime were not established against Lopes, either by his plea or by a jury trial, he was deprived of his due process rights as guaranteed by the federal and Utah constitutions. Furthermore, subsection (5)(c) of Utah Code Ann. § 76–3–203.1 is found to violate a defendants right to a jury trial as established in the Constitution of the State of Utah. We reverse and remand for a new trial on the section 76–3–203.1 charge.

¶ 23 Associate Chief Justice DURHAM and Justice STEWART concur in Justice ZIMMERMAN'S opinion.

RUSSON, Justice, dissenting:

¶ 24 I dissent. In my opinion, the gang enhancement statute is simply a sentencing statute. It does not create a separate offense with a separate penalty, nor does it add elements to the underlying offense. Rather, it merely enhances the minimum sentence for the underlying offense once the accused has been found guilty of that offense; the maximum sentence remains the same regardless of whether the enhancement applies. In fact, the statute specifically states, "This section does not create any separate offense but provides an enhanced penalty for the primary offense." Utah Code Ann. § 76–3–203.1(5)(a) (1995).

¶ 25 As a general principle, the legislature has broad authority to define crimes and corresponding punishments, and its decision in this regard should not be proscribed unless it offends some fundamental principle of justice. *See McMillan v. Pennsylvania,* 477 U.S. 79, 85–86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *see also State v. Angus,* 581 P.2d 992, 994–95 (Utah 1978) ("It is the prerogative of the legislature to prescribe the punishment for crimes."). With respect to Utah's firearm and gang enhancement statutes, this court has recognized and upheld the legislature's authority to require a trial judge to enhance a defendant's statutory minimum sentence if certain requirements are met during the sentencing phase. *See, e.g., State v. Alvarez,* 872 P.2d 450, 461 (Utah 1994) (affirming trial court's imposition of enhanced minimum sentence under section 76–3–203.1 upon court's finding that defendant committed underlying offense "in concert" with others); *State v. Deli,* 861 P.2d 431, 434–35 (Utah 1993) (affirming trial court's imposition of enhanced minimum sentence under section 76–3–203 for use of firearm during commission of offense); *Angus,* 581 P.2d at 995 (same).

¶ 26 Notably, with respect to the firearm enhancement statute, we have consistently held that the statute does not create a separate, additional penalty for the underlying offense; it merely "enhances" the minimum sentence. For example, in *Angus,* after the defendant had been convicted of aggravated assault, the trial court imposed an enhanced minimum sentence pursuant to the firearm enhancement statute. *See* 581 P.2d at 993. Rejecting the defendant's argument that the statute created a separate offense which must be charged separately, we stated:

The punishment for a crime is not and has never been considered a part of the pleading charging a crime.... After conviction, the penalty to be imposed is an entirely separate proposition to be determined by the court as a matter of law on

the basis of the penalty prescribed by the statutes.

*Angus,* 581 P.2d at 995.

¶ 27 More recently, in *Deli,* we affirmed a firearm enhancement imposed after the defendant was convicted of a number of crimes, including murder. Once again, we emphasized that the enhancement penalties of the firearm enhancement statute are not separate sentences; instead, "the legislature intended the penalty for using a firearm in the commission of a felony to simply 'increase' or 'enhance' the original sentence imposed, not to stand alone as a separate sentence." *Deli,* 861 P.2d at 434.

¶ 28 In *Alvarez,* we upheld an enhanced penalty imposed pursuant to the gang enhancement statute, *see* 872 P.2d at 461–62; however, in that case we did not address whether section 76–3–203.1 creates a separate offense with a separate penalty. I would hold that it does not. Before a defendant is subject to an enhanced penalty under either the firearm or the gang enhancement statute, the defendant first must be convicted of an underlying offense.[1] Thereafter, the sentencing judge must impose an "indeterminate" sentence prescribed by statute.[2] While the judge ordinarily has the power to *suspend* the defendant's sentence,[3] under the firearm and gang enhancement statutes the judge must *enhance* the minimum sentence for the underlying offense if certain requirements are met. Thus, the gang enhancement statute operates in exactly the same manner as the firearm enhancement statute—that is, it merely increases the minimum sentence which the legislature has prescribed for the underlying offense. It does not affect the maximum sentence.

¶ 29 The majority opinion holds that the "in concert" requirement defined in section 76–3–203.1 creates a separate offense because it combines a separate mens rea—i.e., "in concert" mental culpability—with a criminal act. This reasoning is flawed. While a defendant may be charged with a crime and held accountable as an accomplice under section 76–2–202,[4] the mere fact that a statute may operate to impose criminal liability does not preclude its use as a sentencing factor, so long as its use in sentencing does not carry a separate or additional penalty. Like the firearm enhancement statute, the gang enhancement statute does not impose an additional or separate penalty upon the judge's finding that the defendant would be criminally liable under that statute; it simply enhances the minimum sentence.

¶ 30 The mere fact that the statute requires the judge to make a certain finding before imposing a sentence does not make that finding an additional element of the predicate offense. For instance, in connection with sentencing, a judge is called upon to weigh aggravating and mitigating factors, and those factors do not thereby become additional elements of the underlying offense:

---

1. The underlying offenses are enumerated in Utah Code Ann. § 76–3–203.1(4) and include crimes such as murder, rape, kidnapping, and robbery.

2. Under Utah's indeterminate sentencing scheme, the sentencing judge must impose a sentence and judgment of imprisonment for an indeterminate term "of not less than the minimum and not to exceed the maximum term provided by law for the particular crime." Utah Code Ann. § 77–18–4(2). Unless otherwise expressly provided by law, every sentence "shall continue until the maximum period has been reached unless sooner terminated or commuted by authority of the Board of Pardons and Parole." *Id.* § 77–18–4(3); *see also Padilla v. Board of Pardons,* 947 P.2d 664, 669 (Utah 1997) ("By its very term, the 'indeterminate' sentence shall continue until the maximum period expires unless the Board, in its discretion, terminates or commutes the punishment or pardons the offender".). Under section 77–27–9(1)(b) (Supp.1998), the Board of Pardons and Parole may release an offender before the minimum term has been served if mitigating circumstances justify the release.

3. *See* Utah Code Ann. § 77–18–1 (Supp.1998).

4. *See State v. Comish,* 560 P.2d 1134, 1136 (Utah 1977) (explaining that accomplice is one who participates in crime in such a way that he could be charged with same offense as the principal defendant); *State v. Murphy,* 26 Utah 2d 330, 489 P.2d 430, 431 (1971) (concluding that defendant who drove co-defendant to store that was robbed, waited in car with engine running, and then drove co-defendant to another car one block away after co-defendant had allegedly killed store owner was "principal").

In all cases where an indeterminate sentence is imposed, the judge imposing the sentence may ... mail to the [Board of Pardons and Parole] ... any information he may have regarding the character of the offender or any mitigating or aggravating circumstances connected with the offense for which the offender has been convicted.

Utah Code Ann. § 77–27–13(5)(a) (Supp. 1998); *see also id.* § 76–3–201(6)(a) (Supp. 1998) ("If a statute under which the defendant was convicted mandates that one of three stated minimum terms shall be imposed, the court shall order imposition of the term of middle severity unless there are circumstances in aggravation or mitigation of the crime."); *id.* § 76–3–201(6)(c) (Supp. 1998) ("In determining whether there are circumstances that justify imposition of the highest or lowest term, the court may consider ... statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing.").

¶ 31 Furthermore, in considering the pertinent sentencing factors, judges sometimes must take into account the defendant's mental state. For example, the Utah Code of Judicial Administration requires judges to "[c]onsider [the following] aggravating circumstances only if they are not an element of the offense.... 5. Offense was characterized by extreme cruelty or depravity.... 7. Offender's attitude is not conducive to supervision in a less restrictive setting." Utah Code of Judicial Admin. app. C, at 1297 (1998); *accord id.* app. D, at 1368 (authorizing presentence investigator to consider whether crime was characterized by extreme cruelty or depravity); *id.* at 1371 (same). Thus, weighing the defendants state of mind is well within the realm of a sentencing judge's authority.

¶ 32 Moreover, acting with "in concert" mental culpability is not identified as an element of any of the enumerated felonies in the gang enhancement statute. *See* Utah Code Ann. § 76–3–203.1(4). In fact, under the statute, a sentencing judge does not even inquire into the defendant's mental state until after the defendant has been duly convicted of an enumerated felony.

¶ 33 The United States Supreme Court's decision in *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), is instructive. That case involved a constitutional challenge to a Pennsylvania sentencing statute which provides that anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge finds, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of the offense. *McMillan,* 477 U.S. at 81, 106 S.Ct. 2411. Recognizing that states have broad authority to define crimes and prescribe penalties, the Court observed that

> the Pennsylvania Legislature has expressly provided that visible possession of a firearm is not an element of the crimes enumerated in the mandatory sentencing statute ... but instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt.

*Id.* at 85–86, 106 S.Ct. 2411.

¶ 34 In upholding the constitutionality of the Pennsylvania statute, the *McMillan* Court reasoned that (1) the enhancement implied no presumption of guilt, nor was the prosecution relieved of its burden of proving the defendant guilty of an enumerated offense, *see id.* at 87, 106 S.Ct. 2411; (2) the enhancement did not extend the period of incarceration beyond the terms provided for any of the enumerated felonies to which it applied, nor did it create a separate offense calling for a separate penalty, but rather merely limited the trial court's sentencing discretion in selecting a penalty within the range already available to it, *see id.* at 87–88, 106 S.Ct. 2411; (3) "[t]he statute [gave] no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense," i.e., the argument that the enhancement was really an element of the offense lacked even superficial appeal because it did not expose the defendant to greater or additional punishment, *see id.* at 88, 106 S.Ct. 2411; and (4) the Pennsylvania legislature "did not change the definition of any existing offense [but] simply took one factor that has

always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor." *Id.* at 89–90, 106 S.Ct. 2411.

In conclusion, the Court stated:

Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all.

. . . .

Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved sentencing schemes that mandate consideration of facts related to the crime without suggesting that those facts must be proved beyond a reasonable doubt.

*Id.* at 91–92, 106 S.Ct. 2411 (citations omitted).

¶ 35 Under *McMillan*'s reasoning, the gang enhancement statute at hand is clearly constitutional. First, the Utah Legislature expressly chose to make group criminal activity a sentencing factor rather than a separate offense. *See* Utah Code Ann. § 76–3–203.1(5)(a) ("This section does not create any separate offense but provides an enhanced penalty for the primary offense."). This is clear not only from the language of the statute, but also because the statute does not impose an additional, separate penalty to the penalty for the underlying offense. Second, the statute comes into play only after the defendant has been duly convicted of violating one of the enumerated offenses in section 76–3–203.1(4). The statute implies no presumption of guilt, and the prosecution is not relieved of its burden of proving each element of an enumerated felony. Third, the statute does not expose the defendant to a greater maximum term; it merely increases the minimum sentence prescribed by statute for the underlying offense. Thus, the statute in no way operates as "a tail which wags the dog of the substantive offense." *McMillan*,

477 U.S. at 88, 106 S.Ct. 2411. Fourth, even if the commission of an offense "in concert with two or more persons" has not traditionally been a sentencing factor, that fact alone should not limit the legislature's authority to prescribe an enhanced penalty for such conduct. If the legislature has the authority to determine that committing a crime while visibly possessing a firearm is a factor that should be given precise weight during sentencing, it should also have the authority to determine that committing a crime "in concert with two or more persons" justifies imposition of an enhanced minimum sentence if certain requirements are met.[5]

¶ 36 Finally, I disagree with the majority's description of the claimed constitutional right allegedly impinged upon by the gang enhancement statute. The majority contends that because the statute enhances the minimum sentence on the basis of findings concerning the defendant's mental culpability, those findings somehow become additional elements of a separate crime. As already indicated, I disagree with this premise. More disturbing, however, is that from this, the majority extrapolates that under both the state and the federal due process clauses, the statute violates a criminal defendant's fundamental right to be presumed innocent until each element of the offense is proven beyond a reasonable doubt. While criminal defendants certainly have a right to such a presumption of innocence, the majority identifies no authority that this right is infringed when a sentencing judge makes findings relevant to sentencing without the state having to prove those findings beyond a reasonable doubt. Without any articulated constitutional basis, the majority simply states that this is required.

¶ 37 In sum, because the gang enhancement statute creates neither a separate crime with a separate penalty nor an additional element to an underlying offense, I

5. While Lopes does not question the reasoning upholding the Pennsylvania statute in *McMillan*, he asks this court to invalidate the gang enhancement statute, which actually makes it more difficult for a judge to enhance a defendant's sentence. Under the Pennsylvania statute, the sentencing judge was merely required to make a factual finding that the defendant visibly possessed a firearm. Under the gang enhancement statute, the sentencing judge must make a factual finding and must further determine that the defendant possessed the mental state required for liability as an accomplice to the underlying offense. *See* Utah Code Ann. § 76–2–202.

would hold that Lopes was not denied any fundamental rights. I would affirm.

¶ 38 Chief Justice HOWE concurs in Justice RUSSON'S dissenting opinion.